Henry J. MORGAN, Plaintiff,

v.

PRUDENTIAL GROUP, INC.; Prudential Ventures Corp.; Nathan M. Shippee; John T. Becker, Richard N. Funkhouser; Frederick M. Glass; Charles J. Kushell, Jr.; Adolph Magidson; Winston S. McAdoo; Price Waterhouse & Co.; Palmer, Serles & Baar; and Caplin & Drysdale, Defendants.

No. 75 Civ. 5245(MEL).

United States District Court, S. D. New York.

Dec. 9, 1981.

**958**

Silverman & Harnes, New York City, for plaintiffs; Joan T. Harnes, New York City, of counsel.

Blatt & Smithline, New York City, for the Prudential defendants.

Milbank, Tweed, Hadley & McCloy, New York City, for Caplin & Drysdale and Mortimer M. Caplin; Adlai S. Hardin, Jr., Samuel H. Gillespie, III, Susan E. Lewis, New York City, of counsel.

D'Amato & Lynch, New York City, for Palmer, Serles & Baar; Robert E. Meshel, Andrew R. Simmonds, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for Price Waterhouse & Co.

LASKER, District Judge.

This case arises from plaintiff, Henry Morgan's, ("Morgan") investment in a limited partnership interest in the Plaza One Development Fund ("Plaza One") in May, 1972. The background facts are fully set out in our previous published opinions, 446 F.Supp. 628 (D.C.1978) and 81 F.R.D. 418 (D.C.1978), and are merely summarized here.

In September, 1980, we held that Morgan's third amended complaint stated a cause of action under the Securities Exchange Act of 1934 (15 U.S.C. § 78a *et seq.*) in particular §§ 10(b), 15(c)(1) and 27, (15 U.S.C. §§ 78j(b), 78*o*(c)(1), and 78aa), and Securities Exchange Commission Rules 10b–5 and 15c1–2, 17 C.F.R. §§ 204.10b–5 and 240.15c1–2. The complaint alleges that the Plaza One prospectus offered a possibility of obtaining maximum tax benefits through the use of back end leveraging and that, because the defendants knew or should have known before issuing the prospectus that such results would be "impossible" to achieve, the prospectus was fraudulent.

Defendant Prudential Group, Inc. ("Prudential") established and became the general partner in Plaza One. Defendant Palmer, Serles & Baar ("Palmer, Serles"), Prudential's general counsel, is alleged to have aided and abetted Prudential by drafting the registration statement with knowledge of or in reckless disregard of the fact that it was false and misleading. (Third Amended Complaint ¶ 30). Defendant Caplin & Drysdale, Prudential's tax advisor, is alleged to have aided and abetted Prudential through preparation of the tax opinion included in the prospectus. (*Id.* ¶¶ 31, 32).

■ Palmer, Serles and Caplin & Drysdale now move for summary judgment pursuant to Fed.R.Civ.Pr. 56 on the ground that they did not act with requisite *scienter*, an essential element of a cause of action under section 10(b). *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

## I. *Actual Knowledge*

Both moving parties have submitted affidavits asserting their lack of actual knowledge of the critical facts.

■ Morgan argues that summary judgment is improper where the issue is subjec-

tive knowledge—a question of state of mind. While it may normally be true that in cases involving states of mind summary judgment is inappropriate because fact questions remain, it is an overstatement to contend that summary judgment may never be justified in such cases. Moreover, the question here is not truly one of "state of mind"—i.e., not one of intent, attitude, motive, point of view—but rather whether defendants actually had knowledge regarding a particular prospectus at a particular time. And even where the question of defendants' belief (as opposed to knowledge) is at issue, there are circumstances in which summary judgment is appropriate.

For example, in *Donnelly v. Guion*, 467 F.2d 290 (2d Cir. 1972), the Court of Appeals found summary judgment to have been properly granted although the question of what the defendant had believed was at issue. The court stated that summary judgment would not have been proper if plaintiff had set forth facts in support of her allegations as to defendant's mental state and the district court had resolved the motion by drawing inferences from those facts. However, summary judgment was proper because plaintiff had rested on "vague and conclusory allegations" such that, if the case had proceeded to trial supported only by those allegations, "a directed verdict would have been appropriate." *Id.* at 293.[1]

Thus, the question presented is whether Morgan has set forth facts sufficient to withstand a motion for a directed verdict.

Morgan places primary reliance on certain internal Caplin & Drysdale memoranda, written in November, 1972 and June, 1973.[2] The memoranda, which record meetings at Caplin & Drysdale's offices at which Caplin & Drysdale and Palmer, Serles members were present, indicate that circumstances had arisen which created concerns on the part of the attorneys as to whether the Prudential prospectuses were defective. For example, in the June, 1973 memorandum, a Caplin & Drysdale partner, Mr. Vincent, records his concern that the prospectus "could be read as not disclosing the possibility of front-end leveraging or the tax consequences of such transactions." (p. 4)

Morgan argues that, from the fact that defendants appear to have been aware in November, 1972 of certain problems with Prudential's prospectuses, it can be inferred that defendants knew in May, 1972 (the time at which Morgan made his investment) of the particular defect complained of by Morgan, and that Morgan should be allowed to prove the proposition. The argument is unpersuasive.

■ It is true that Morgan, as the party opposing the motion for summary judgment, is entitled to those favorable inferences which "may *reasonably* be drawn" from the facts presented, *Empire Electronics Co. v. United States*, 311 F.2d 175 (2d Cir. 1962) (emphasis added). Nevertheless, evidence of knowledge in November, without more, will not support a reasonable inference of knowledge in May. Second, these memoranda do not contain a scintilla of evidence to support Morgan's assertion that defendants knew of the *specific defect* to which, after three amended complaints, Morgan has been limited; that is, that maximum tax benefits through back end leveraging were impossible to achieve.

Nothing which has been said above should be taken to imply any deviation from the particularly heavy burden imposed on one who moves for summary judgment with respect to a state of mind. A party's

---

1. The court noted that Fed.R.Civ.Pr. 56(f) provided plaintiff an opportunity, of which she had not availed herself, to submit an affidavit presenting reasons why she "cannot ... present by affidavit facts essential to justify [her] opposition." *Id.* at 293 n. 7.

2. Portions of the memoranda are appended to Morgan's memoranda of law in opposition to defendants' summary judgment motions. Caplin & Drysdale has provided the memoranda in their entirety, as well as related memoranda and correspondence (Exs. B-F to Affidavit of Mortimer Caplin in support of Caplin & Drysdale's motion for summary judgment) in order to allow the portions presented by Morgan to be considered in context.

mental state is the clearest example of an issue on which the evidence tends to be within the exclusive control of the party whose mental state is at issue, and, in some circumstances, with respect to certain states of mind, e.g., good faith, no evidence may exist other than the sworn testimony of the party himself. However, in this case, where Morgan has been on notice since our 1978 opinion that the defendants' actions in December, 1972 were deemed irrelevant to any injury to Morgan sustained as a result of his purchase in May, 1972, 446 F.Supp. at 633, his failure to use the discovery process, either before the motion or in connection with the motion, to elicit any evidence of knowledge by defendants in or prior to May, 1972 supports the assertions of defendants that there is nothing to discover.

Morgan's other argument on the issue of actual knowledge, that defendants must have had the requisite knowledge because they were experts in the area and any expert would have known, is refuted by Morgan's own expert, Martin J. Whitman. Whitman states that tax attorneys "knew or *should have known*" of the relevant facts. (Affidavit of Martin J. Whitman, in opposition to Prudential's motion for summary judgment, ¶ 1 p. 2–3) ("Whitman Affidavit") (emphasis added). If Morgan's own expert is unwilling to conclude that the relevant expertise is a virtual guarantee of the knowledge in question here, a court must certainly be unwilling to do so.

For the reasons stated above, Morgan has failed to demonstrate that either Palmer, Serles or Caplin & Drysdale had any actual knowledge of the fraud alleged in the complaint.

## II. *Recklessness*

### A. *Palmer, Serles*

At no point in Morgan's brief in opposition to Palmer, Serles' motion for summary judgment does he refer to a single fact in support of his contention that Palmer, Serles was reckless. Palmer, Serles has supported its motion for summary judgment with an affidavit which refutes the allegations of recklessness (Affidavit of

Burton Abrams, in support of Palmer, Serles' motion for summary judgment. ¶¶ 2, 3, 6, 10, 12). For example, Abrams states that the members of his firm who were responsible for this account did not have experience and training in oil and gas drilling, (¶ 3), and that the firm relied on the participation of Prudential's tax counsel, Caplin & Drysdale. (¶ 12). Instead of responding to the Abrams affidavit, Morgan has "rest[ed] on the mere allegations of his pleading", Fed.R.Civ.Pr. 56(e) and accordingly, the undisputed facts justify the grant of Palmer, Serles' motion for summary judgment.

### B. *Caplin & Drysdale*

■ Morgan has provided support, discussed below, for his allegations of Caplin & Drysdale's recklessness. Accordingly, it becomes necessary to consider whether recklessness will satisfy the *scienter* requirement. Caplin & Drysdale is alleged to have been an aider and abettor in the fraud, not a principal, and while "reckless conduct will generally satisfy the *scienter* requirement . . . there are special considerations in applying this principle to aiders and abettors," *IIT v. Cornfeld*, 619 F.2d 909, 923 (2d Cir. 1980), in particular whether the alleged aider and abettor owed a fiduciary duty to the defrauded party:

"Certain cases have suggested that the sufficiency of reckless conduct [to satisfy the *scienter* requirement with respect to an aider and abettor] may turn on the existence of a fiduciary duty or duty to disclose, *see Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 44 (2d Cir. 1978), and that, absent any such duty, no liability may be found without a conscious intention to defraud. *See Edwards & Hanley v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, *cert. denied*, 444 U.S. 1045 [100 S.Ct. 734, 62 L.Ed.2d 731] (1980)."

*Oleck v. Fischer*, 623 F.2d 791, 794 (2d Cir. 1980).

Assuming that "the existence of a fiduciary duty or duty to disclose" is a prerequisite to the use of a recklessness standard to

determine *scienter* it remains for decision whether tax counsel who prepare a tax opinion for a prospectus have a fiduciary or other special relationship to prospective investors. Because prospective investors are likely to place considerable weight on the tax opinion and the identity of the tax counsel who prepared it, it can be argued with considerable force that such a relationship does exist.

In any event, it cannot be doubted that the reliance of prospective investors on the attorneys' tax opinion is foreseeable to the attorneys, and several courts have concluded that where the foreseeability of reliance is apparent, the recklessness standard may be applied. For example, in *Oleck v. Fischer*, 73 Civ. 1460 (S.D.N.Y. June 8, 1979), *aff'd*, 623 F.2d 791 (2d Cir. 1980), Judge Haight applied the recklessness standard to an accounting firm in a suit by investors who relied on the firm's opinion letter. His view was that recklessness was sufficient to establish *scienter* where "an accountant has reason to foresee that his audit or opinion letter will be relied upon by third parties." *Id.* at 40. *Competitive Associates, Inc. v. Laventhol Krekstein Horwath & Horwath*, 478 F.Supp. 1328, 1341 (S.D.N.Y.1979) is also consistent with this view. The rationale of *Oleck* and *Competitive Associates* is persuasive and appears applicable to this case.

In opposition to the motion, Morgan has submitted the affidavit of Martin J. Whitman, a registered broker-dealer, chartered financial analyst, and faculty member at the Yale University School of Organization and Management, who lists a number of major corporations as his clients. Whitman states that "Prudential Funds could not obtain nonrecourse financing until they had twelve months of successful operations," the critical fact at issue in this litigation, and that, "tax attorneys ... knew or should have known such facts concerning financing [or] [i]f they did not, they were, reckless in not learning them." (Whitman Affidavit, ¶ 1 pp. 2–3).

In response to Whitman, Caplin & Drysdale furnished affidavits of experts, discussed below. Caplin & Drysdale also argues that Whitman's assertion is incorrect and that, moreover, he is not qualified to render an opinion on the subject of what tax attorneys should or should not have known. The accuracy of Whitman's statement is a question of fact which cannot be resolved, on this record, on a motion for summary judgment. As for Whitman's qualifications, it is true that his resume does not attest to any legal training. However, in view of his strong credentials in the area of finance, which date back to the 1950's, it is not possible to conclude on a motion for summary judgment that he is not competent to render an opinion as to what tax attorneys were reckless in not knowing on issues of finance.

Caplin & Drysdale also present affidavits of experts which dispute Whitman's conclusions as to the possibility of obtaining non-recourse financing in less than twelve months. Caplin & Drysdale contends that the recklessness standard,

"an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it,"

*Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), dictates a grant of summary judgment in any case in which the defendant can produce an affidavit disputing the affidavits of plaintiff's experts. Caplin & Drysdale argues that if experts disagree on the critical facts, those facts cannot be "so obvious that the defendant must have been aware of [them]." *Id.*

The short answer to Caplin & Drysdale's argument is that the burden on a movant for summary judgment is not so light. It may be true that if a trial on this matter should come down to a battle between competent experts, the *Rolf* standard would require the granting of a verdict in Caplin & Drysdale's favor. However, it is also possible that, for example, on hearing the testimony of Caplin & Drysdale's experts, the trier of fact would decline to credit their statements.

In conclusion, while Caplin & Drysdale's critique of Whitman is powerful, it is not strong enough to entitle Caplin & Drysdale to summary judgment under a recklessness standard.

Accordingly, the motion of Palmer, Serles for summary judgment is granted. The motion of Caplin & Drysdale for summary judgment is denied.

It is so ordered.