**Loren J. ANDREO, et al.**

v.

**FRIEDLANDER, GAINES, COHEN, RO-SENTHAL & ROSENBERG, et al.**

**No. H–85–551 Civil.**

United States District Court, D. Connecticut.

May 12, 1987.

Howard Rosenfield, Plainville, Conn., for plaintiffs.

Dennis M. Laccavole, Arnold Bai, Bridgeport, Conn., Deborah S. Freeman, Joseph Skelley, Jr., Joel J. Rottner and Carl F. Yeich, Skelley, Clifford, Vinkels, Williams & Rottner, Hartford, Conn., Warren Kaps, Hackensack, N.J., for defendants.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT, FOR JUDGMENT ON THE PLEADINGS AND TO DISMISS THE COMPLAINT

BLUMENFELD, Senior District Judge.

This case arises out of transactions relating to the private placement of various limited partnership interests in satellite communication facilities. There are 67 plaintiffs who purchased interests in one or more of three limited partnerships. The defendants, who were involved in the transactions in various different ways, are a law firm, two public accounting firms, a lawyer/promoter, two named corporations, and unknown defendants designated as "John Does 1–25" and "XYZ Corporations 1–25." The plaintiffs claim that the defendants were part of a scheme to defraud them, violating the federal securities laws, 15 U.S.C. §§ 77*l*, 77q, and 78j, the federal racketeering statute (RICO), 18 U.S.C. §§ 1961 *et seq.*, and state statutes and common law.

Defendants Peat, Marwick & Mitchell ("Peat Marwick") and Zarrow, Zarrow & Klein moved to dismiss the original complaint on a variety of grounds. In a ruling dated April 28, 1986, this court granted that motion and gave plaintiffs leave to amend the complaint within 30 days. On May 28, 1986, plaintiffs filed an amended complaint.

Defendant Peat Marwick subsequently moved to dismiss the amended complaint on a variety of grounds including failure to plead fraud with the amount of particularity required by Rule 9(b), lack of a private right of action under section 17(a), and failure to state a claim under RICO. That motion was granted on December 23, 1986. *See Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 651 F.Supp. 877 (D.Conn.1986).

Defendant Friedlander, Gaines, Cohen, Rosenthal & Rosenberg ("Friedlander Gaines") has moved for summary judgment, for judgment on the pleadings, and for dismissal of the complaint on a number of grounds, including failure to plead fraud with particularity, failure to state a claim under the securities laws and RICO, failure to comply with the statute of limitations, and failure to state a claim under either of two different state law theories. Although that motion was filed before the complaint was amended, counsel for the defendant has asked that it be applied to the amended complaint. Oral argument on the motion was heard on January 20, 1987.

### Allegations

The plaintiffs claim that the defendants engaged in a scheme to defraud them through three limited partnerships: Star Link Associates ("Star Link"), Sky Link Associates ("Sky Link") and Galactic Link Associates ("Galactic"). The purpose of these limited partnerships was to build and operate ground station links for satellite communications. The partnerships were organized by Benjamin Rabin, who was assisted in various ways by the other defendants.

Although the amended complaint contains many general and conclusory allegations as to the unlawful conduct of the defendants, it is far more particular than the original complaint. It spells out some specifics as to the role of the various defendants in the allegedly fraudulent scheme. Under the heading "Role of Friedlander Gaines," plaintiffs allege that

Friedlander Gaines drafted the offering memoranda and tax opinions for each of the three limited partnerships. Amended Complaint ¶¶ 41–46. They also allege that these documents used grossly erroneous financial projections and were substantial factors in the sale of the limited partnership interests to plaintiffs. *Id.* ¶ 47.

Other specific allegations about the role of Friedlander Gaines are scattered throughout the complaint. There are allegations that Friedlander Gaines represented in the offering memoranda that the debt assumption and conversion agreements were solely for tax purposes, *id.* ¶ 35; that it recklessly failed to inquire about and disclose numerous irregularities in the documents and transactions relating to each of the three limited partnerships, *id.* ¶¶ 61–63; that it knowingly or recklessly failed to disclose that the partnerships would have revenue shortfalls, *id.* ¶ 65a; and that it knowingly or recklessly failed to make inquiries about business experience and capitalization and about the source, nature or independence of appraisals, which inquiries would have exposed the scheme to defraud, *id.* ¶ 65b.

In addition, plaintiffs also allege on information and belief that Friedlander Gaines failed to disclose that the limited partnership certificate for Sky Link was never filed, and that it had obtained information which demonstrated that its opinion letter relied upon by plaintiffs was wrong, *id.* ¶ 65c.

The final set of allegations specific to Friedlander Gaines are contained in a breach of contract count. There, plaintiffs allege that they were intended third-party beneficiaries of a contract between Rabin and Friedlander Gaines, and that Friedlander Gaines breached the contract by failing to file a limited partnership certificate for Sky Link and/or failing to inform plaintiffs that such a certificate had not been filed, as well as by other unspecified actions. *Id.* ¶¶ 102–106.

### Discussion

Although this motion has been brought as a motion for summary judgment, for judgment on the pleadings and to dismiss the complaint, it will be treated as a motion for judgment on the pleadings. Summary judgment under Fed.R.Civ.P. 56 would be inappropriate because discovery in this case was stayed pending resolution of the various motions to dismiss. *See In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir. 1985) (party opposing motion converted to a motion for summary judgment should be given reasonable opportunity to meet facts outside the pleadings), *cert. denied,* —— U.S. ——, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *see also* Fed.R.Civ.P. 56(f).[1] Treating this motion as a motion to dismiss under Fed.R.Civ.P. 12(b) is also inappropriate because it would be untimely. Such a motion is to be filed before a defendant answers the complaint, Fed.R.Civ.P. 12(b), but Friedlander Gaines filed this motion after its answer. However, after the pleadings have been closed the defense of failure to state a claim may still be raised under Rule 12(h)(2) on a motion for judgment on the pleadings.

The standards which apply to a motion authorized by Rule 12(h)(2) raising the defense of failure to state a claim are the same as the standards which apply to a Rule 12(b)(6) motion. *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 353 F.Supp. 264, 268 (S.D.N.Y.1972), *aff'd on*

1. Even if the court considered this a proper motion for summary judgment, the motion would be denied. As the discussion that follows will show, there are genuine issues of material fact in dispute. The affidavits submitted by Friedlander Gaines establish facts which are not sufficient for the legal defenses raised by its papers. For example, the affidavits establish that Friedlander Gaines only prepared drafts of offering memoranda and tax opinions, that it had no knowledge of the individual plaintiffs' identities, and that it had no knowledge of any facts underlying the alleged misrepresentations. Affidavit of Jules Levine ¶¶ 2, 5, 8; Affidavit of Joseph S. Rosenthal ¶¶ 2, 5, 8. These facts do not establish that Friedlander Gaines is not liable as an aider and abettor in a securities fraud. As will be explained below, Friedlander Gaines may be held liable as an aider and abettor if it prepared the draft documents in reckless disregard of the truth, and if it could reasonably foresee that investors such as plaintiffs would rely on statements made in those drafts.

*other grounds,* 495 F.2d 228 (2d Cir.1974); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1367, at 688 (1969). Thus, grounds for dismissing a complaint under Rule 12(b)(6) are grounds to enter judgment on the pleadings under Rule 12(h)(2) and Rule 12(c). In addition, all allegations that are properly pleaded must be treated as if they were true and must be construed in favor of the nonmovant. *See Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228, 231 (2d Cir. 1974); 5 C. Wright & A. Miller, *supra,* § 1368, at 690.

The court will first consider the sufficiency of the securities claims against Friedlander Gaines, followed by an examination of the RICO claims, the statute of limitation arguments, and the state law claims.

## I. *Sufficiency of Fraud Allegations Under Section 10(b) of the 1934 Act*

### A. *Standards*

▮▮▮ The thrust of plaintiffs' claim against Friedlander Gaines is that it aided and abetted Rabin and his associates in the allegedly fraudulent scheme. The elements for an aiding and abetting claim under section 10(b) of the 1934 Act are (1) that there be a primary fraud, (2) that the aider and abettor have "knowledge" of the fraud, and (3) that aider and abettor provide "substantial assistance" to the achievement of the primary fraud. *IIT, An Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980) (Friendly, J.); *see also Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 119 (2d Cir.1982). The knowledge element of aiding and abetting may be satisfied by reckless disregard of the truth in some circumstances. *See Decker,* 681 F.2d at 119; *IIT,* 619 F.2d at 923.

**2.** Rule 9(b) states:
   In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

**3.** For example, paragraphs 61–63 of the amended complaint allege that Friedlander Gaines recklessly failed to disclose some 23 different material facts in the three limited partnership offering memoranda. These omissions include:

These elements must be pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.[2] *Andreo,* 651 F.Supp. at 880; *In re Cincinnati Gas & Elec. Sec. Litig.,* 594 F.Supp. 233, 237 (S.D.Ohio 1984); *see also Decker,* 681 F.2d at 119; *IIT,* 619 F.2d at 922–27. Thus, the amended complaint must plead the circumstances giving rise to the plaintiffs' aiding and abetting claim. *Andreo,* 651 F.Supp. at 880; Fed.R.Civ.P. 9(b). To properly plead the knowledge element of aiding and abetting, the pleaded circumstances must include the "events which [plaintiffs] assert give rise to a strong inference that the defendants had knowledge." *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979); *accord Decker,* 681 F.2d at 115 (2d Cir.1982); *see also Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987).

### B. *Application of the Standards*

The amended complaint is specific enough to meet the particularity requirements of Rule 9(b). It is undisputed that the amended complaint sets forth a claim for primary fraud against Rabin and his immediate associates with sufficient particularity. This primary fraud allegedly was substantially assisted by Friedlander Gaines' inclusion of false information and/or omission of material information from drafts of offering memoranda and tax opinions. Plaintiffs have spelled out these omissions in detail,[3] and have alleged that they were both significant and material. Thus, the complaint sufficiently alleges the first and third elements of aiding and abetting.

The allegations with respect to the knowledge element of aiding and abetting are more problematic. The amended com-

that Rabin was in violation of various securities laws for various offenses, that Rabin was involved as a defendant in other securities litigation, that Rabin had no experience in the communications field, that the general partner was involved in self-dealing, that a Rabin affiliate would profit from construction of the earth stations, and that the financing arrangement was not as described in the offering memoranda.

plaint contains only conclusory allegations that Friedlander Gaines knew that erroneous information was included in the draft memoranda and tax opinions and that material facts were omitted. It does not set forth the factual basis for an inference of knowledge, and, as a result, the amended complaint has not alleged knowledge with the necessary particularity. *See Ross*, 607 F.2d at 558; *see also Decker*, 681 F.2d at 115.

Alternatively, reckless disregard of the truth can, in some circumstances, satisfy the knowledge element of aiding and abetting. *See Decker*, 681 F.2d at 119; *IIT*, 619 F.2d at 923. Friedlander Gaines argues that the circumstances of this case do not justify applying the recklessness standard for the knowledge element of aiding and abetting. It asserts that since it only prepared *drafts* of the offering memoranda and tax opinions and that it had no personal contact with any of the plaintiffs, it was not under a fiduciary duty to the plaintiffs, and therefore can be held liable only if it acted with knowledge of the false information or material omissions.

■ The existence of a fiduciary duty, however, is not a prerequisite for the application of the recklessness standard to satisfy the knowledge element of an aiding and abetting claim under the securities laws. Although the Second Circuit has not yet ruled on the issue, *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 575 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982), Judge Lasker has held that attorneys can be held liable as aiders and abettors where it is reasonably foreseeable that potential investors will rely on documents they draft, if they omit material information from those documents or include erroneous information in reckless disregard for the truth. *Morgan v. Prudential Groups, Inc.*, 527 F.Supp. 957, 961 (S.D.N.Y.1981), *aff'd mem.*, 729 F.2d 1443 (2d Cir.1983); *see also In re Investors Funding Corp. Sec. Litig.*, 523 F.Supp. 550, 558 (S.D.N.Y.1980) ("recklessness is sufficient to establish scienter [for aiding and abetting] where plaintiffs are third parties whose reliance upon the account-

ant's audit or opinion letter is reasonably foreseeable"); *Olek v. Fischer*, [1979] Fed. Sec.L.Rep. (CCH) ¶ 96,898, at 95,699 (S.D. N.Y.1979), *aff'd on other grounds*, 623 F.2d 791 (2d Cir.1980). This standard of "reasonable foreseeability" is used in determining the scope of similar duties under common law. *See Mallis v. Bankers Trust Co.*, 615 F.2d 68, 82 (2d Cir.1980) (Friendly, J.) (majority common law rule in American jurisdictions is that in determining the scope of an accountant's duty to not make negligent misrepresentations, the critical factor is the parties' reasonable expectations, not their formal legal relationship), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); Restatement (Second) of Torts § 552(2) (negligent supplier of erroneous information may be held liable for third party's reliance if supplier knew the information would be conveyed to third parties for their benefit and guidance); Prosser, *Misrepresentation and Third Persons*, 19 Vand.L.Rev. 231, 239 (1966) (tendency to treat cases where party knows that recipient of information may pass it on to a group to induce reliance the same as cases where party intends that recipient rely on information); Note, *Accountants' Liabilities for False and Misleading Financial Statements*, 67 Colum L.Rev. 1437, 1441–44 (1967) (common law imposes liability on accountants that recklessly prepare financial statement relied upon by investors).

The court agrees with Judge Lasker that attorneys should be held accountable if they draft certain documents for securities offerings with reckless disregard of the truth. This does not mean that attorneys who draft such documents have an affirmative duty to verify all information provided by their clients, or to discover if any pertinent information might have been omitted. Rather, those attorneys have a responsibility to not act in reckless disregard of the truth when using the information provided by clients in performing their professional duties and preparing offering memoranda and tax opinions.

Friedlander Gaines' reliance on *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), is misplaced.

In that case Chiarella, an employee of a financial printer, was convicted of securities fraud. From documents given to his employer, he had deduced before the information was public that certain companies were going to be the subject of forthcoming takeover bids. He then used this information in purchasing stock of the target companies without disclosing it to the sellers. The Supreme Court reversed the conviction, finding that the defendant had no duty to disclose the information to the sellers.

*Chiarella* is distinguishable from *Morgan* and the other authority cited with it because *Chiarella* involved a *purchaser's* nondisclosure, rather than nondisclosures by a party that helped prepare documents to be given to investors. While it is not reasonably foreseeable that a seller would rely on the disclosures of a purchaser (absent some special relationship), it is reasonably foreseeable that investors would rely on the expertise of the professionals that draft offering memoranda and tax opinions. As a result, such professionals should be under the obligation to not act in reckless disregard of the truth when they undertake the drafting of such documents.

■ In the present case it was foreseeable that the plaintiffs, as investors in the various securities for which Friedlander Gaines drafted offering memoranda and tax opinions, would rely on the drafts prepared by Friedlander Gaines. Therefore, allegations that Friedlander Gaines omitted material information from the documents in reckless disregard of the truth are sufficient to meet the knowledge element of an aiding and abetting claim. Since those allegations are spelled out in great detail,[4] they also meet the particularity requirement of Rule 9(b). Of course, whether that

claim can be proven at trial is another matter, which would require evidence that the conduct alleged was in fact highly unreasonable and an extreme departure from professional conduct. *See Decker*, 681 F.2d at 120.[5]

## II. *Sufficiency of RICO Allegations*

■ Friedlander Gaines also argues that its role in drafting offering memoranda and tax opinions, as alleged in the amended complaint, is not sufficient to state a RICO claim against it. The two relevant sections of RICO will be considered in turn.

### A. *Section 1962(c)*

Section 1962(c) of RICO provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962. Thus, in order to state a claim against Friedlander Gaines under this provision, plaintiffs must allege that Friedlander Gaines conducted or participated in conducting a RICO enterprise through a pattern of racketeering activity. *See Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Racketeering activity is defined to include specific predicate offenses, including mail fraud indictable under 18 U.S.C. § 1341, wire fraud indictable under 18 U.S.C. § 1343, and securities fraud punishable under various federal securities statutes. 18 U.S.C. § 1961(1). These predicate acts involving fraud must be pleaded in conformity with the particularity requirements of

---

**4.** *See supra* note 3.

**5.** At oral argument, counsel for Friedlander Gaines argued that the draft memoranda and tax opinions do not state a claim under the holding of this court in its last ruling on a motion to dismiss because, by their terms, those documents "bespeak caution." *See Andreo*, 651 F.Supp. at 881 (relying on *Luce v. Edelstein*, 802 F.2d 49 (2d Cir.1986)). The court finds this argument without merit. Counsel for Friedlan-

der Gaines has not pointed out any terms which bespeak caution, and the court's review of the material indicates no such cautionary language. If anything, the language of the documents gives additional reason for investors to rely on them. For example, the tax opinion indicates that Friedlander Gaines "reviewed the Partnership Agreement, Management Agreement and such other documents and advice as we have deemed necessary to review or consider."

Rule 9(b) of the Federal Rules of Civil Procedure. *Andreo,* 651 F.Supp. at 882 (citing cases). The court will first consider whether the amended complaint states a RICO cause of action in general, and then whether Friedlander Gaines is sufficiently implicated for the amended complaint to state a RICO claim against it.

### 1. *Sufficiency of the Claim in General*

■ There are a variety of predicate acts alleged in the amended complaint that might support a RICO claim. The allegations concerning mail fraud and wire fraud can be disposed of at the outset as not supporting a RICO claim because they are not pleaded with the necessary particularity. The complaint merely alleges that "defendants" used the mail, Amended Complaint ¶ 26, that "each of the defendants" transmitted "numerous materials through the mails in interstate commerce," *id.* ¶ 90(b), and that "each of the defendants" transmitted "private offering memoranda and other information" by wire, *id.* ¶ 90(c). Such conclusory allegations are insufficient. *Andreo,* 651 F.Supp. at 882; *see also Decker,* 681 F.2d at 114; *Ross,* 607 F.2d at 557. They do not specify which defendants used mail or wire services, what was transmitted, when it was transmitted, or to whom it was sent. *See Zerman v. Ball,* 735 F.2d 15, 22 (2d Cir.1984); *see also Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *Andreo,* 651 F.Supp. at 880.

It is undisputed, however, that the amended complaint alleges securities fraud with respect to Rabin and his immediate affiliates with sufficient particularity to meet the requirements of Rule 9(b). The question, therefore, is whether these security fraud allegations, combined with other allegations in the amended complaint, are sufficient to state a RICO claim.

For relief under RICO, plaintiffs must demonstrate that defendants were involved in an "enterprise" and that there was a "pattern of racketeering." An enterprise for purposes of section 1962 is " 'a group of persons associated together for a common purpose of engaging in a course of conduct' and 'is proved by evidence of an ongoing organization, formal or informal,

and by evidence that the various associates function as a continuing unit.' " *United States v. Ianniello,* 808 F.2d 184, 191 (2d Cir.1986) (quoting *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981)).

■ The allegations in the amended complaint sufficiently allege a RICO-type enterprise. Though the allegation in Count III is conclusory, Amended Complaint ¶ 88, it is supported by numerous other specific allegations regarding the relationships between the defendants and the actions they took. For example, the amended complaint alleges that Rabin, the main principal in the alleged fraud, was the sole shareholder of Continental Consultants Corporation, which was an 80% owner of Prime Network, Inc., which, in turn, owned Satellite Communications Network, Inc., which was the general partner in the three limited partnerships. *Id.* ¶ 22. Together with other organizations and individuals, these corporations allegedly worked together as a continuing unit to promote fraudulent securities and to siphon assets out of the limited partnerships. *See* Amended Complaint ¶ 89.

The case law as to what constitutes a "pattern of racketeering" is somewhat more confusing. The recent Supreme Court decision in *Sedima, SPRL v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), however, casts some light on this requirement of a RICO claim. There, the Court indicated that a pattern of racketeering requires "at least two acts of racketeering activity" and that the legislative history shows a requirement of "continuity plus relationship which combines to produce a pattern." *Id.* 105 S.Ct. at 3285 n. 14. In addition, the Court noted that the definition of a pattern of racketeering activity defined in the criminal part of RICO might be useful in interpreting the phrase as used in the civil part of RICO. *Id.* The criminal definition of pattern of racketeering includes "acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e). These passages re-

quire "at least two acts that have a common purpose of furthering a continuing criminal enterprise." *Ianniello*, 808 F.2d at 192.

■ Under these standards, the amended complaint alleges a pattern of racketeering. It claims that three limited partnership offerings were undertaken by the same parties with the same intent to defraud on three different occasions. Thus, there were more than two predicate acts with common purposes, results, participants, and methods of commission, which allegedly furthered the continuing RICO enterprise. The fact that there were many different victims rather than the same few victims is of no consequence. It merely demonstrates that the scheme was used against different people, not that a pattern did not exist.

### 2. *Sufficiency of the Claim Against Friedlander Gaines*

Having determined that the amended complaint generally states a claim for violation of RICO, it must next be considered whether the amended complaint states a RICO claim specifically against Friedlander Gaines. To be implicated in the allegations of a scheme to defraud outlined above, Friedlander Gaines must have conducted the enterprise conducting the pattern of racketeering, or participated in it. 18 U.S.C. § 1962(c).

■ The key to deciding whether the amended complaint states a RICO claim against Friedlander Gaines lies in the terms "conduct" and "participate." These terms are not defined in the RICO statute. However, in common usage they imply at least a general awareness or knowledge of the activity one "conducts" or in which one "participates." A person that assists another in some unknown activity does not conduct the activity and is not a participant. Thus, Friedlander Gaines conducted or participated in the enterprise conducting a pattern of racketeering only if it assisted with knowledge of the illegal activities. Mere reckless disregard of the truth when drafting documents does not justify a finding of RICO civil liability on the basis that the party participated in the illegal enterprise. *See O'Brien v. Dean Witter Reynolds, Inc.*, [1984 Transfer Binder] Fed.Sec. L.Rep. ¶ 91,509, at 98,562 (D.Az.1984) [Available on WESTLAW–DCT database] ("Civil liability under RICO requires knowing or intentional participation and not mere negligence or recklessness."); *see also Moss v. Morgan Stanley, Inc.*, 553 F.Supp. 1347, 1362 (S.D.N.Y.) (no participation in RICO scheme where defendant was allegedly negligent or reckless in aiding and abetting), *aff'd on other grounds*, 719 F.2d 5 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).[6]

---

**6.** There is a well-established rule in the Second Circuit, which, at first blush, seems inconsistent with this analysis. The rule states that RICO has no independent scienter requirement; proof of scienter under the law prohibiting the predicate acts is sufficient to justify liability under RICO. *E.g., United States v. Biasucci*, 786 F.2d 504, 512 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986); *United States v. Bagaric*, 706 F.2d 42, 53–54 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 134, 78 L.Ed.2d 128 (1983); *United States v. Boylan*, 620 F.2d 359, 361–62 (2d Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980). *But see United States v. Bledsoe*, 674 F.2d 647, 661 (8th Cir.) (expressing "grave doubts" about the rule), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). Since the federal securities laws in some circumstances only require scienter of reckless disregard of the truth, *see, e.g. Lanza v. Drexel & Co.*, 479 F.2d 1277, 1306 (2d Cir.1973) (en banc) (under Rule 10(b)–5); *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 396–98 (2d Cir.) (section 14(e)), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973), this rule would seem to allow liability under RICO upon proof of reckless disregard of the truth if the predicate acts are certain types of securities fraud.

These three criminal RICO cases are distinguishable. They did not directly face the issue of whether RICO liability could be based on a reckless disregard of the truth. Instead, they were concerned only with whether RICO requires a finding of *criminal intent* to violate RICO in addition to the criminal intent required by the law prohibiting the predicate act. *See Biasucci*, 786 F.2d at 512; *Bagaric*, 706 F.2d at 53–54. Thus, the cases did not consider whether the word "participate" in section 1962(c) requires that the defendant have general knowledge of the illegal activity for liability under RICO. In fact, two of these cases are implicitly consistent with the holding of this court. Those cases approved of jury instructions that required a finding that the defendant have a gen-

■ This interpretation of the word "participate" is supported by the case law on the doctrine of criminal aiding and abetting. The classic statement of the elements of criminal aiding and abetting comes from *Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). There, the Court, quoting Judge Learned Hand, stated that "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Id.* at 619, 69 S.Ct. 769 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)); *accord United States v. Tyler*, 758 F.2d 66, 70 (2d Cir.1985); *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir.1983), *cert..denied*, 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984). For a defendant to "participate" in a crime as an aider and abettor, "it must be proved that the defendant consciously assisted the commission of the specific crime in some active way." *United States v. Dickerson*, 508 F.2d 1216, 1217–18 (2d Cir.1975). Thus, mere reckless assistance is not sufficient to constitute

participation as an aider and abettor. *See Moss*, 553 F.Supp. at 1362; *see also United States v. Newman*, 490 F.2d 139, 142–43 (3d Cir.1974) (involvement in activities without knowing of their criminal objective did not constitute aiding and abetting.)[7]

The construction of section 1962(c) as requiring at least a general awareness or knowledge of the illegal activities of the enterprise is consistent with the reasoning and results of other RICO cases not directly addressing this issue. For example, some cases have found that liability under RICO requires more than mere membership in an enterprise, or association with it. *United States v. Castellano*, 610 F.Supp. 1151, 1165 (S.D.N.Y.1985); *United States v. Russotti*, 555 F.Supp. 1236, 1241 (W.D. N.Y.), *aff'd on other grounds*, 717 F.2d 27 (2d Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984). In addition, cases that have imposed liability for aiding and abetting a RICO violation have required both knowledge of the illegal activity and substantial assistance in it. *Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 412 (S.D.N.Y.1984); *Kranzdorf v. Green*, 582 F.Supp. 335, 337 (E.D.Pa.1983).[8]

eral knowledge of the illegal activity (though both held that part of the instructions requiring specific knowledge was unnecessary and overly generous to defendants). *Biasucci*, 786 F.2d at 512; *United States v. Scotto*, 641 F.2d 47, 55–56 (2d Cir.1980).

That liability under RICO should require general knowledge of the enterprise's racketeering activity even if liability under section 10(b) of the securities law only requires reckless disregard of the truth is supported by two differences between RICO and the securities laws. First, unlike the securities laws, RICO provides for the extraordinary civil relief of treble damages. 18 U.S.C. § 1964(c). Second, section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), seeks to prohibit the use of "any manipulative or deceptive device or contrivance," while section 1962(c) of RICO, 18 U.S.C. § 1962(c), seeks to make it unlawful to "participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering." A document which is issued in reckless disregard of the truth may well be a "deceptive device" but not a means of "participat[ing]" in a pattern of racketeering.

7. A construction of the terms "conduct or participate" that would include those that assist a RICO enterprise without knowledge of its illegal

activities would be inconsistent with the legislative intent of the Act. The primary purpose of the RICO statute is to provide an additional tool to combat organized crime. *See Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3288, 87 L.Ed.2d 346 (1985) (Powell, J., dissenting). The reach beyond "traditional organized crime and comparable ongoing structured criminal enterprises was intended to be incidental and to exist only to the extent necessary to maintain the constitutionality of [the] statute." ABA, Report of the Ad Hoc Civil RICO Task Force 124 (1985); *see also Sedima*, 105 S.Ct. at 3289 (Powell, J., dissenting). If liability could be based on assistance given to a RICO enterprise without knowledge of the illegal activities of the enterprise, the reach of the statute beyond traditional organized crime would be far more than "incidental." Under such a standard, almost any person or entity employed or retained by the principal of a RICO enterprise might be considered a "participant."

8. Although these cases used an aiding and abetting theory, the RICO statute does not specifically provide for it. This court does not address whether aiding and abetting is properly applied in the RICO context, except to the extent that it is helpful in determining the scope of the phrase

■ Under this standard, the amended complaint does not state a RICO claim against Friedlander Gaines. It alleges that Friedlander Gaines conducted the enterprise by aiding and abetting the securities fraud, by committing mail fraud, and by committing wire fraud. Amended Complaint ¶ 90. Of these allegations, the only ones that meet the particularity requirements of Rule 9(b) are those which allege aiding and abetting through a reckless disregard of the truth in preparing drafts of offering memoranda and tax opinions. Those allegations, however, do not amount to an allegation that Friedlander Gaines conducted the alleged RICO enterprise or participated in it because they do not allege that Friedlander Gaines assisted the primary fraud with knowledge thereof.[9]

### B. *Section 1962(d)*

Even if Friedlander Gaines did not participate in the alleged RICO violation, under section 1962(d)[10] it may be held liable if it conspired to do so. For liability under that section, the offending party "must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate acts." *Andreo*, 651 F.Supp. at 883; *Laterza v. American Broadcasting Co.*, 581 F.Supp. 408, 413 (S.D.N.Y. 1984); *accord United States v. Cauble*, 706 F.2d 1322, 1341 (5th Cir. 1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Melton*, 689 F.2d 679, 683 (7th Cir.1982); *see also United States v. Ruggiero*, 726 F.2d 913, 921 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).

■ The amended complaint does not sufficiently allege a claim for conspiracy under RICO. Although Rule 9(b) does not apply to claims of conspiracy because it is not one of the enumerated averments, *see Alfaro v. E.F. Hutton & Co.*, 606 F.Supp. 1100, 1117 (E.D.Pa.1985), plaintiffs must nevertheless provide some factual basis for the legal conclusion that a conspiracy existed, *id.; accord Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981); *see also Ellentuck v. Klein*, 570 F.2d 414, 426 (2d Cir.1978); *Powell v. Workmen's Compensation Board*, 327 F.2d 131, 137 (2d Cir. 1964); *Andreo*, 651 F.Supp. at 883. The amended complaint merely alleges that Friedlander Gaines "did unlawfully, wilfully, and knowingly conspire together [with other defendants] to violate 18 U.S.C. Section 1692(c)." Amended Complaint ¶ 92. Although other parts of the amended complaint set forth in detail various alleged acts or omissions of Friedlander Gaines, they do not allege any objective manifestation of an agreement to participate in a RICO enterprise through the commission of predicate acts, nor do they set forth the facts upon which the conspiracy claim is based. Mere conclusory allegations such as these are insufficient. *Alfaro*, 606 F.Supp. at 1117; *see also Laterza*, 581 F.2d at 413 (allegations of an "unspecified role in an undetailed conspiracy" are insufficient).

### III. *Statute of Limitations*

Defendant Friedlander Gaines also raises a statute of limitations defense. Such a defense was raised in an earlier motion to dismiss brought by Peat Marwick, and the court's ruling with respect to that motion is

---

"to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering." 18 U.S.C. § 1962(c).

9. If the plaintiffs chose to amend their complaint in an attempt to properly bring Friedlander Gaines into the RICO count, the court notes that they must be able to assert to the best of their information and belief after reasonable inquiry that it is well grounded in fact that Friedlander Gaines had at least a general awareness or knowledge of the illegal activities of the

RICO enterprise. *See* Fed.R.Civ.P. 11. Moreover, such an amendment would have to allege conducting or participating in a RICO enterprise in such a manner that it would "give the defendant fair notice of what the plaintiff[s'] claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

10. The relevant part of section 1962(d) states:
    (d) It shall be unlawful for any person to conspire to violate any of the provisions of ... this section.

dispositive here. After reviewing the allegations in the complaint, this court found:

> [Plaintiffs] have cited acts of concealment by the defendants, including sending misleading status reports to the plaintiffs, and misrepresenting the gravity of certain IRS audits. Plaintiffs' assertions that defendants engaged in a common course of conduct to conceal the fraud may or may not be valid. At this early stage, however, they suffice to bring the equitable tolling doctrine into play. It is not clear from the face of the complaint that this action is time-barred; therefore, the statute of limitations alone would not be grounds for dismissing this claim.

*Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* Civ. No. H–85–551, at 19 (April 28, 1986) (citation omitted) [Available on WESTLAW, DCT database].

■■ The amended complaint's allegations of concealment do not materially differ from those contained in the first complaint, and Friedlander Gaines has not presented any reasons why this earlier decision should be reconsidered. Thus, since the equitable tolling doctrine applies with respect to plaintiffs' federal claims, *id.* at 18, the allegations are still sufficient to toll the statute of limitations.

This court's earlier ruling is also dispositive with respect to the statute of limitations defense as applied to the state claims. Under Conn.Gen.Stat. § 52–595, fraudulent concealment tolls the statute of limitation. There is no reason why the court's earlier finding that plaintiffs sufficiently alleged such fraudulent concealment to toll the statute of limitations with respect to the federal claims should not be applied to the state claims as well. Therefore, at this early stage of the litigation, the court considers the statute of limitations tolled for the state claims.

## IV. State Law Claims

Friedlander Gaines also raises specific arguments with respect to plaintiffs' state claims against it. Its arguments as to the third-party beneficiaries theory, the Connecticut Unfair Trade Practices Act (CUTPA), and pendent jurisdiction will be considered in turn.

### A. Third-party Beneficiary Theory

■■ Friedlander Gaines argues that plaintiffs' amended complaint fails to state a claim against it under the theory that the plaintiffs were third-party beneficiaries to a contract between Rabin and Friedlander Gaines. In order to be a third-party beneficiary under Connecticut law, the parties to the contract must have intended that the promisor would assume a direct obligation to the third parties. *Knapp v. New Haven Road Construction Co.,* 150 Conn. 321, 325, 189 A.2d 386 (1963). This intent is to be determined from the terms of the contract read in light of the circumstances attending its making, including the motives and purposes of the parties. *Id.* (citing *Colonial Discount Co. v. Avon Motors, Inc.,* 137 Conn. 196, 201, 75 A.2d 507 (1950)). It is not necessary that in every instance there be express language creating the direct obligation. *Id.* at 326, 189 A.2d 386.

■■ The allegations in the amended complaint are sufficient to state a claim for breach of contract as third-party beneficiaries. Plaintiffs allege the existence of a contract between Rabin and Friedlander Gaines, that they were the intended third-party beneficiaries, that there was a breach of contract, and that the breach injured them. Amended Complaint ¶¶ 102–105. While the amended complaint does not set forth any specific language of the contract or other evidence tending to show that the parties intended to create a direct obligation to plaintiffs, that is a matter of proof not of pleading.[11] Under the Federal

11. Defendant Friedlander Gaines has submitted two affidavits upon which the court could rely to grant its motion for summary judgment with respect to this claim. The affidavits indicate that members of Friedlander Gaines had no knowledge of the identity of any of the plaintiffs until they filed this lawsuit, and that they never had any communication with any of the plaintiffs. Affidavit of Jules Levine ¶¶ 5, 6; Affidavit of Joseph S. Rosenthal ¶¶ 5, 6. While these facts might be taken as evidence that Friedlander Gaines did not intend to create a direct

Rules the amended complaint need only set forth a short and plain statement of the claim, *see* Fed.R.Civ.P. 8(a), which it clearly does.

### B. *Connecticut Unfair Trade Practices Act*

Friedlander Gaines also argues that plaintiffs fail to state a claim under CUTPA. In a supplemental memorandum it directed this court's attention to the recent Connecticut Supreme Court decision in *Russell v. Dean Witter Reynolds, Inc.*, 200 Conn. 172, 510 A.2d 972 (1986). In that case, the court reversed the award of damages that were based on CUTPA, *id.* at 184, 510 A.2d 972, holding that CUTPA does not apply to the purchase and sale of securities. *Id.* at 175, 510 A.2d 972.

■ *Russell's* interpretation of the scope of CUTPA, of course, is binding on this court. Since the plaintiffs claim that the alleged fraudulent conduct involved the sales of securities, Amended Complaint ¶ 4, they do not have a claim under CUTPA.

### C. *Pendent Jurisdiction*

■ Friedlander Gaines argues that the pendent state claims against them should be dismissed because the federal claims are to be dismissed. Pendent jurisdiction is a doctrine of discretion. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Where the federal claims are dismissed before trial, the state claims should generally be dismissed as well. *Id.; Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir.) (retention of pendent state law claim after dismissal of federal claim under Rule 12(b)(6) probably would be an abuse of discretion), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

From these principles it follows that the state claims against Friedlander Gaines should not be dismissed. Since the amended complaint sets forth a federal cause of action against Friedlander Gaines, it is appropriate for this court to consider state claims arising out of the same occurrences. This court finds that it is in the interest of judicial economy, convenience and fairness to try the federal and state claims against Friedlander Gaines in the same case.

### V. *Section 17(a) of the 1933 Securities Act*

One final argument merits consideration. Friedlander Gaines has renewed the argument made in Peat Marwick's first motion to dismiss that section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), does not create a private right of action. After noting that the issue is very controversial, this court declined to take a position on it in an earlier ruling because even if there was a private right of action, plaintiffs' complaint was not specific enough with respect to that claim. *Andreo*, Civil No. H–85–551, at 27–29 (April 28, 1986). However, now that the amended complaint is particular enough to state a securities claim against Friedlander Gaines, this court must now resolve the issue for purposes of this case.

■ In *Kirshner v. United States*, 603 F.2d 234 (2d Cir.1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), the Second Circuit squarely held that there is a private right of action under section 17(a). Even though the Supreme Court has noted that the issue is unsettled, *see, e.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983), and some noted jurists and scholars have criticized the Second Circuit rule, *see, e.g., Yoder v. Orthomolecular Nutrition Institute*, 751 F.2d 555, 559 n. 3 (2d Cir.1985) (Friendly, J.), *Kirshner* is still the law in this Circuit. Thus, until such time as the rationale of *Kirshner* is overruled, plaintiffs in this circuit have a private right of action under section 17(a). *See United States v. Ian-*

obligation to the plaintiffs as third-party beneficiaries, summary judgment is not appropriate at this time because the plaintiffs have not had an opportunity for discovery on these issues, and because the issues are ones where the facts are within the knowledge and control of defend-

ants. *See In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985) (party opposing motion converted to a motion for summary judgment should be given reasonable opportunity to meet facts outside the record); *see also* Fed.R.Civ.P. 56(f).

*niello,* 808 F.2d 184, 190 (2d Cir.1986) (court of appeals bound by decision of earlier panel unless rationale overruled by an en banc panel or the Supreme Court).

#### Conclusion

For the foregoing reasons, Friedlander Gaines' motion for judgment on the pleadings is granted in part and denied in part.[12] The amended complaint states a claim against Friedlander Gaines for aiding and abetting a securities fraud. That claim is pleaded with sufficient particularity to satisfy Rule 9(b). The amended complaint also states a claim against Friedlander Gaines for breach of contract to the detriment of third-party beneficiaries. It does not, however, state a RICO claim because it does not sufficiently allege that Friedlander Gaines conducted the RICO enterprise, or participated in it. While Friedlander Gaines may have assisted the scheme by preparing documents in reckless disregard of the truth, such assistance must be undertaken with at least general knowledge or awareness of the illegal activities to constitute conducting a RICO enterprise or participating in it. Furthermore, the amended complaint does not state a claim against Friedlander Gaines for violation of the Connecticut Unfair Trade Practices Act because that act does not apply to sales of securities. Thus, Counts III and IX of the amended complaint are dismissed as to defendant Friedlander Gaines. In addition, since Connecticut law is clear as to the scope of CUTPA, Count IX is dismissed as to the other defendants on the court's own motion.

SO ORDERED.

---

**12.** Even though a judgment on the pleadings is normally a final judgment, *see* 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1372, at 706 (1969), in this case the court will allow the plaintiffs the same rights as if this were a motion to dismiss under Rule 12(b)(6). Rule 12(h)(2) merely provides a device which preserves the defense of failure to state a claim after the pleadings close. *Id.* § 1367, at 689. As such, it would make more sense for it to be raised under its own name rather than as a motion for judgment on the pleadings, *id.* § 1369, at 701, since Rule 12(c) was really designed as "a means of disposing of cases when the material facts are not in dispute ... and only questions of law remain," *id.* § 1367, at 685, and was not designed to raise the procedural defects usually raised by a 12(b) motion.