**Audrey NEVITSKY, Plaintiff,**

v.

**MANUFACTURERS HANOVER BROKERAGE SERVICES and Manufacturers Hanover Trust Company, Defendants.**

No. 86 Civ. 1978 (EW).

United States District Court,
S.D. New York.

Feb. 16, 1987.

Anderson Russell Kill & Olick, P.C., New York City, for Audrey Nevitsky; Arthur S. Olick, Ann V. Kramer, of counsel.

Simpson Thacher & Bartlett, New York City, for Mfrs. Hanover Brokerage Services and Mfrs. Hanover Trust Co.; Melvyn L. Cantor, Mary Elizabeth McGarry, Edwin M. Baum, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Audrey Nevitsky brought this non-diversity action against Manufacturers Hanover Brokerage Services ("MHBS"), a discount broker, and its corporate parent, Manufacturers Hanover Trust ("MHT"), alleging securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934,[1] civil RICO[2] and pendent state law claims for common law fraud, breach of fiduciary duty, and wrongful dishonor of a check. Defendants move to dismiss the federal claims for failure to state a cause of action under Fed.R.Civ.P. 12(b)(6), or for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b), and to dismiss plaintiff's pendent state law claims for lack of subject matter jurisdiction.

The complaint, the allegations of which are deemed true on this motion to dismiss,[3] alleges that plaintiff maintained a checking account with MHT and a securities trading account with MHBS; that plaintiff was induced to open these accounts by MHBS' statements that it was an experienced broker, expert in the purchase and sale of securities, and fully staffed and equipped to execute the orders of its customers accurately and promptly. The complaint further alleges that it was agreed between the parties that the two accounts would be linked, so that the balances in both accounts would be available for covering checks and purchasing securities, and plaintiff was allowed twenty-four hours to cover any overdrafts, and that Barry Vort, plaintiff's broker, handled all trading in the account.

From February to July 1985, Vort traded exclusively in options contracts, all of the transactions occurring smoothly. However, in August 1985, when Vort began trading in stocks, he encountered difficulty with MHBS; for example, the complaint alleges that sometime in August 1985, Vort inquired of MHBS the balance available for trading and was informed that there was $70,000 in the MHBS account and $64,000 in the MHT account, for a total of $134,000; that in fact, plaintiff's MHBS account then had a debit balance of $140,904.70, and the MHT account had a small credit balance, thus leaving no money for trading. Based

---

**1.** 15 U.S.C. sec. 78j(b).

**2.** 18 U.S.C. sec. 1964(c).

**3.** *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986).

on this erroneous information, Vort purchased securities for which there were insufficient funds in plaintiff's account. In consequence, it is alleged that, on September 19, 1985, MHBS forced a liquidation of a portion of plaintiff's portfolio below the prevailing market price, thereby causing plaintiff substantial losses.[4]

The complaint further alleges that, on September 24, 1985 MHBS refused to execute Vort's direction to purchase approximately $20,000 of General Foods calls, although there were sufficient funds in plaintiff's account to cover the transaction when the order was placed; that, MHBS, after accepting the order, did not execute it because its records and backroom were in disarray. In the ensuing days, the price of the calls increased, causing plaintiff additional losses and disrupting Vort's trading pattern. Moreover, Nevitsky alleges that at some other time in September 1985 MHBS refused to execute Vort's orders for NW Ayer and Arkla options in a timely and accurate manner.[5] Finally, on November 5, 1985 defendants dishonored plaintiff's check for $30,000 because of insufficient funds although there should have been over $200,000 in her account at the time from the sale of 4500 shares of Sara Lee Corp., which Vort had directed to be settled by MHBS on November 4, 1985.

In support of her claims, plaintiff relies on an SEC release stating that it is a violation of Section 10(b) for a broker to induce the sale or purchase of securities when it does not have the facilities to do so promptly.[6] Defendants assert that regardless of the application of the SEC release to plaintiff's claims, she has not properly alleged facts to show that she has standing to bring a private cause of action under Section 10(b), and has not pleaded the alleged fraud with sufficient particularity to satisfy Fed.R.Civ.P. 9(b). Defendants further argue that the civil RICO claim should be dismissed because plaintiff failed to plead the predicate acts of fraud with particularity, and the complaint does not with regard to the RICO claim properly allege the existence of an "enterprise" and a "pattern of racketeering activity" as required by 18 U.S.C. sec. 1962.

## DISCUSSION

On a motion to dismiss, the complaint must be read generously and every reasonable inference drawn in favor of the plaintiff.[7] The complaint cannot be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [8]

### I. The Securities Fraud Claims

A private plaintiff bringing a cause of action under Section 10(b) [9] must show that

---

**4.** Plaintiff's memorandum of law in opposition to defendants' motion to dismiss explains that a liquidation of 4,000 shares of Hammermill Paper took place on September 19, 1985, with Vort's consent, to satisfy a "fed call." Plaintiff's Memorandum of Law, at 3.

**5.** This allegation gives no indication as to whether the sales ever occurred, and does not state that plaintiff was harmed in any way by MHBS' actions in this regard.

**6.** This release, SEC Release No. 34–8363, 17 C.F.R. sec. 241.8363, 33 Fed.Reg. 11150 (July 29, 1968), states in part:

[I]t is a violation of applicable anti-fraud provisions for a broker-dealer to accept or execute any order for the purchase or sale of a security or to induce or attempt to induce such purchase or sale if he does not have the personnel and facilities to enable him to promptly execute and consummate all of his securities transaction.

**7.** *Pross v. Katz,* 784 F.2d 455, 457 (2d Cir.1986); *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir.1985).

**8.** *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985).

**9.** Section 10(b) provides, in relevant part:

It shall be unlawful for any person, (b) To use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest for the protection of investors.

the allegedly fraudulent activity involved an actual purchase or sale of securities.[10] The requirement that the activity occur "in connection with" the sale of securities adds an element of causation whereby the loss must be the proximate result of the fraud alleged.[11]

▮▮▮ Although Nevitsky asserts many factual allegations suggesting claims of negligence and breach of contract, she refers to only one sale of securities throughout her entire complaint—MHBS' liquidation of a portion of her portfolio. Nevitsky's other allegations all refer to instances where MHBS refused to consummate sales. Because the securities laws are designed to protect investors in the purchase and sale of securities, they cannot be invoked where, as here, securities purchases did not take place.[12] Moreover, section 10(b) cannot form the basis of liability for claims of mere corporate mismanagement, breach of fiduciary duty, or failure to perform a promise not to breach such a duty.[13]

▮▮▮ Plaintiff's argument that the forced liquidation below market rate constituted securities fraud must also fail. Although a specific promise to perform a particular act while secretly intending not to perform the act may violate Section 10(b) where the promise is part of the consideration for the transfer of the securities,[14] the breach of that promise must nonetheless be the cause of the subsequent injury.[15] To establish causation for purposes of Section 10(b), a plaintiff must show "both *loss causation*—that the misrepresentations or omissions caused the economic harm—and *transaction causation*—that the violations in question caused the [plaintiff] to engage in the transaction in question." [16]

▮▮▮ It simply cannot be said that any breach by MHBS of its promise to act as an expert broker caused the liquidation of Nevitsky's securities at below market price. This liquidation, apparently occurring pursuant to a fed call, was not based on any misinformation about the funds available in plaintiff's account, but on the

---

**10.** *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975) (adopting view of *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952)), that section 10(b) revealed "no congressional intention to extend a private civil remedy for damages to other than defrauded purchasers or sellers of securities...." and noting that Congress has twice refused to change section 10(b)'s wording from "in connection with the purchase or sale of any security" to "in connection with the purchase or sale of *or any attempt to* purchase or sell, any security." *Id.* 421 U.S. at 732, 95 S.Ct. at 1923.

**11.** *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1566 (E.D.N.Y.1985); *see also SEC v. Texas Gulf Sulfur,* 401 F.2d 833, 860 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

**12.** A misrepresentation concerning the mechanics of a securities transaction, without particular regard to the nature of the securities themselves, is not actionable under section 10(b). *Bosio,* supra. *See also In re Financial Corp. of America,* 796 F.2d 1126, 1129 (9th Cir.1986).

**13.** *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Pross v. Katz,* supra, at 458; *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 (2d Cir.1971); *Silverman*

*v. Senft,* Fed.Sec.L.Rep. para. 92,543 (S.D.N.Y. 1986) [Available on WESTLAW, DCTU database]; *Zerman v. Jacobs,* 510 F.Supp. 132, 134 (S.D.N.Y.), *aff'd without opinion,* 672 F.2d 901 (2d Cir.1981).

**14.** *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir. 1986); *Pross v. Katz,* supra., at 457. While MHBS' representations of competency may arguably be viewed as part of the consideration (i.e., MHBS' commission) for plaintiff's electing to purchase securities through MHBS, it is also arguable that MHBS' promise was merely a generalized one to act as a faithful fiduciary, and thus its breach is not actionable under Section 10(b); *see Edelstein,* supra., at 55. However, because defendants' motion to dismiss may be resolved on causation grounds, it is unnecessary to determine whether MHBS' representations constituted more than such a generalized promise.

**15.** *Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 313 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

**16.** *Bennett v. United States Trust Company of New York,* supra., at 313, *quoting Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

true state of the account.[17] Plaintiff does not allege that she would have had sufficient funds to cover the fed call had MHBS correctly stated her balance to Vort.[18] Moreover, it is not the liquidation per se that plaintiff asserts caused her injury, but that the liquidation occurred below market. Because plaintiff has not alleged, nor can she, that any possible breach of Section 10(b) proximately caused her injuries, her securities fraud claims must be dismissed.

## II. *The Civil RICO Claim*

■ Plaintiff's complaint also alleges that defendants have violated the Racketeer Influenced and Corrupt Organizations Act.[19] The predicate racketeering acts underlying plaintiff's civil RICO claim consist of the securities fraud claims, which have been dismissed, and several claims of mail and wire fraud arising out of the same facts alleged in the securities fraud claims. Although the elements of mail or wire fraud require knowing use of mail or wire communications in interstate commerce to further a scheme to defraud,[20] plaintiff refers to no instance of mail or wire communication in her complaint,[21] and does not even allege that the communication between Vort and MHBS took place over the telephone or via the mails. Additionally, while plaintiff alleges that defendants "devised a plan to disadvantage"[22] her, and that defendant MHBS "knowingly misrepresented material facts with respect to its ability to carry out trades in accordance with normal custom and usage in the trade,"[23] plaintiff offers no factual basis for this allegation of scienter.

The law is clear that, although Rule 9(b)[24] requires only a general allegation of scienter and a basic outline of the allegedly fraudulent activity,[25] a complaint must offer particulars as to what statements were made, how they were fraudulent, who made them, and when and where they were made.[26] It is also required that a plaintiff alleging fraud provide some factual basis for the allegation of scienter.[27] Plaintiff's complaint is woefully lacking in this respect.[28] Accordingly, her civil RICO claim

---

**17.** *See Zerman v. Jacobs,* 510 F.Supp. 132, 134 (S.D.N.Y.), *aff'd without opinion,* 672 F.2d 901 (2d Cir.1981).

**18.** Even if this were alleged, it would not have supplied the requisite causal connection to plaintiff's injuries because "but for" cause is not sufficient to satisfy the "in connection with" requirement of Section 10(b). *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985).

**19.** 18 U.S.C. sec. 1962(c) provides, in relevant part:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise through a pattern of racketeering activity.

**20.** *United States v. Gelb,* 700 F.2d 875, 879 (2d Cir.1983); *United States v. Regent Office Supply Co.,* 421 F.2d 1174, 1180 (2d Cir.1970).

**21.** In her memorandum of law, however, plaintiff cites to an instance when defendants mailed to plaintiff a combination MHT and MHBS checking/brokerage account application and promotional material about MHBS. Plaintiff did not include these mailings as part of her claims of fraud.

**22.** Complaint, para. 24, 25.

**23.** Complaint, para. 21.

**24.** "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

**25.** *Goldman v. Belden,* 754 F.2d 1059, 1069 (2d Cir.1985).

**26.** *Id.,* at 1069–70.

**27.** *Soper v. Simmons International, Ltd.,* 632 F.Supp. 244, 249 (S.D.N.Y.1986); *River Plate Reinsurance Co. v. Jay-Mar Group Ltd.,* 588 F.Supp. 23, 26–27 (S.D.N.Y.1984); *Songbird Jet Ltd. v. Amax, Inc.,* 581 F.Supp. 912, 924–25 (S.D.N.Y.1984), *aff'd mem.* 779 F.2d 39 (2d Cir. 1985); *Crystal v. Foy,* 562 F.Supp. 422, 432 (S.D. N.Y.1983); *O'Connor & Associates v. Dean Witter Reynolds, Inc.,* 529 F.Supp. 1179, 1197 (S.D. N.Y.1981).

**28.** Plaintiff also incorrectly alleges the existence of an "enterprise" by asserting that an individual defendant, MHBS, was one and the same with the enterprise itself. Complaint, para. 22. For RICO purposes, "a corporate entity may not be simultaneously the 'enterprise' and the 'per-

must be dismissed. While it is questionable that plaintiff can properly plead a civil RICO violation, in view of the policy of freely granting leave to replead whenever a plaintiff may be able to correct the deficiencies in her complaint,[29] plaintiff is granted leave to file an amended complaint within 30 days from date.

The foregoing disposition makes it necessary to dismiss all of plaintiff's pendent state claims because the Court no longer has subject matter jurisdiction over them, having dismissed the federal claims in this action.[30]

### CONCLUSION

Defendants' motion to dismiss plaintiff's securities fraud claims and the pendent state law claims is granted. Defendants' motion to dismiss the civil RICO claim is also granted, but without prejudice to plaintiff's amending her complaint within 30 days from date.

So ordered.

son' who conducts the affairs of the enterprise...." *Bennett v. United States Trust Company of New York,* 770 F.2d 308, 315 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

**29.** Fed.R.Civ.P. 15(a).

**30.** *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1960); *Crystal v. Foy,* supra., at 433, n. 46.