CELPACO, INC., Plaintiff,

v.

MD PAPIERFABRIKEN, et al., Defendants.

Civ. No. B–86–108 TFGD.

United States District Court,
D. Connecticut,
Bridgeport Division.

May 10, 1988.

Charles T. Lee, Paul, Hastings, Janofsky & Walker, Stamford, Conn., Bruce Topman, pro hac vice, Steven M. Nachman, pro hac vice, Webster & Sheffield, New York City, for plaintiff.

William Rush, Thomas W. Witherington, L. Douglas Shrader, Beverly Stauffer Knapp, Zeldes, Needle & Cooper, Bridgeport, Conn., Thomas J. O'Sullivan, Paul J. Bschorr, pro hac vice, Kathryn L. Bedke, pro hac vice, White and Case, New York City, Patricia M. Gaug, Pullman, Comley, Bradley & Reeves, Bridgeport, Conn., for defendants.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

Celpaco, Inc. brought this action in March, 1986 to redress alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, the Connecticut Unfair Trade Practices Act (CUTPA), CONN.GEN.STAT. § 42–110a et seq., and a variety of common law claims including breach of contract and fiduciary duty, and misappropriation of corporate assets. The amended complaint, filed in December, 1986, contains sixteen counts, eight of which are founded in RICO, the plaintiff's jurisdictional ticket to this Court. See 28 U.S.C. § 1331. Pendent jurisdiction is sought over the remaining eight counts.

Magistrate Latimer initially issued a proposed ruling on the defendants' motions to dismiss the RICO claims, but withdrew and reconsidered the ruling in light of the then recent decision of the Second Circuit in *United States v. Ianniello*, 808 F.2d 184 (1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3229, 97 L.Ed.2d 736 (1987). In ultimately denying the motions, the Magistrate rejected defendants' arguments that the plaintiffs had failed properly to allege a pattern of racketeering activity, or that the predicate acts were neither indictable nor pleaded with the required particularity. Ruling on Reconsidered Motions to Dismiss (June 24, 1987); *see* 18 U.S.C. § 1961; Fed.R. Civ.P. 9(b). After a *de novo* review by the Court the Proposed Ruling Upon Reconsideration was then affirmed. Mem. of Affirmance (Sept. 11, 1987). Following the Second Circuit's decision in *Furman v. Cirrito*, 828 F.2d 898 (1987), the Court, cognizant of the considerable fluctuation in the judicial interpretation of RICO claims throughout the circuit, granted the defendants' motion for reconsideration. The instant ruling comes on the heels of another *de novo* review of defendants' motions to dismiss, as well as a survey of current RICO case law. *See* 28 U.S.C. § 636(b)(1).

## DISCUSSION

When reviewing a motion to dismiss, the Court must treat as true plaintiff's well pleaded factual allegations, *Miree v. De-Kalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Fifth Avenue Peace Parade Commn. v. Gray*, 480 F.2d 326, 331 (2d Cir.1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974), and may grant the motion only if "it appears beyond doubt that plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

A fair reading of the complaint indicates that Celpaco is a Connecticut corporation engaged in the business of importing and selling printing paper throughout the Unit-

ed States. In May, 1983 it contracted with a West German Firm, MD Papierfabriken ("MD")[1], to develop a market for MD in the United States, to sell MD's paper products to Celpaco's customers, and to administer those sales, for which Celpaco was to receive a commission. Through the efforts of Celpaco's employees and their use of Celpaco's customer contacts (the list of which was protected under the contract), the endeavor was a successful one that occasioned the growth of both the Celpaco firm and MD's sales in the United States. Two of the larger customers attracted by Celpaco for MD were R & R Donnelley & Sons Company of Chicago ("Donnelley") and Greater Buffalo Press of Buffalo ("Buffalo"), with whom Celpaco negotiated agreements for purchases through December 1988 of substantial quantities of MD products.

The initial agreement between Celpaco and MD was for a one year term that thereafter was extended several times, and was due to terminate in December, 1988. During the course of these extended terms, the parties agreed to increases in Celpaco's commission rates. Obviously, the last extended agreement, as well as the Donnelley and Buffalo agreements, never came to fruition, as the instant action was precipitated by the untimely termination of the venture and the falling out between Celpaco, its key employees, and MD.

It is Celpaco's claim upon "information and belief"—and the Court assumes its truth for purposes of this motion—that, at some point, four officers and employees of Celpaco (known in the complaint as the "individual defendants"), who constituted nearly all of Celpaco's sales and marketing force, and who each had acquired knowledge of Celpaco's confidential and proprietary business information, conspired with each other and MD to supplant Celpaco in the sale and distribution of MD products, and to put Celpaco out of business. The conspiracy was furthered by the repudiation by MD of its agreements with Celpaco, the "en masse" resignation by the individual defendants from Celpaco, the formation by the defendants of the defendant Soundview Graphic International Corporation ("Soundview") to assume Celpaco's position, and the utilization by the defendants of plaintiff's confidential and proprietary business information to solicit Celpaco's customers and to propel Soundview into the market.

Against this background rest the RICO allegations, each of which are founded upon the same "predicate" racketeering acts. In an effort to meet the threshold requirements of RICO, Celpaco has alleged a number of fraudulent communications and transactions by the defendants in furtherance of their scheme that supposedly constitute indictable mail and wire fraud violations: [2]

1) that on December 30, 1985, MD incorporated Soundview (¶ 34(a));

2) by telex on December 30, 1985, MD terminated its agreement with Celpaco effective January 15, 1986 (¶ 34(a));

3) in December, 1985 MD caused the cessation of commission payments due Celpaco (¶ 34(b));

4) on January 2, 1986, the individual defendants resigned *en masse* by submitting backdated letters of resignation (¶ 34(c));

5) in January, 1986 MD breached the Donnelley and Buffalo agreements by terminating them prematurely (¶ 34(d));

6) the individual defendants, aided and abetted by MD and Soundview, and through the use of Celpaco's confidential business information, have solicited and continue to solicit Celpaco customers, including customers for whom MD guaranteed protection under their initial agreement with Celpaco, and have attempted to sell MD products to those customers (¶ 34(e)); and

1. MD Papierfabriken does business as, and also is known as MD Druckpapier, Munchen Dachau Papierfabriken, or Munchen Dachau Druckpapier. Each entity is named as a defendant in this action, but are referred to collectively as "MD." Amended Complaint ¶¶ 4 & 5.

2. Under RICO, a properly pleaded mail or wire fraud predicate act must be an "indictable" offense. 18 U.S.C. § 1961(1)(B).

7) on or about December 30, 1985, one of the individual defendants, John Marks, telephoned the Connecticut National Bank and instructed it to transfer the balance of a checking account maintained by Celpaco, to an account maintained by MD in New York (¶ 35).[3]

Apparently taking advantage of the alternative pleading provision of Fed.R.Civ.P. 8(e)(2), the plaintiff has pleaded two different enterprises—one as a conglomeration of all the defendants, and the other as Soundview—and for both has alleged a violation of each of the four activities prohibited by RICO. *See* 18 U.S.C. § 1962.

### I. *RICO "Pattern" Requirement*

To set forth a viable claim for damages under RICO, the plaintiff must properly allege that the "defendants committed two or more 'predicate' acts, 18 U.S.C. § 1961(1), constituting a 'pattern of racketeering activity,'" *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), "done in the conduct of the affairs of an enterprise." *United States v. Weisman*, 624 F.2d 1118, 1122 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980); *see also Beck*, 820 F.2d at 49; *United States v. Ianniello*, 808 F.2d at 190; 18 U.S.C. §§ 1961(4) & (5), 1962, 1964(c).[4] The defendants have claimed that the allegations in the amended complaint support neither the "enterprise" nor the "pattern" components of the RICO statutory scheme.

The issues presented in the instant case are not unlike those that have triggered a debate among litigants, academics, and ultimately, the courts concerning the definition and application of the "enterprise" and "pattern" concepts.[5] A catalyst, though certainly not the sole agent, of the clouded understanding that has evolved in this area, is the description of "pattern" conjured by the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In footnote 14 of that opinion, the Court focused on the legislative history of the act, which indicated that the target of RICO was not sporadic activity, but the infiltration of legitimate businesses that is the product of "more than one 'racketeering activity'" and the threat of similar such activity continuing. *Id.* at 496, 105 S.Ct. at 3285. Apparently attempting to paraphrase this view, the Senate report went on to note that "[i]t is this factor of continuity plus relationship which combines to produce a pattern." *Id.* (quoting S.Rep. No. 91–617, p. 158 (1969)).

Many courts since have struggled with the task of applying this amorphous concept to a variety of scenarios, though few, if any, have succeeded in articulating a cogent approach. The disparity of approaches taken by courts in other circuits is typical of the divergent paths taken by district courts within the Second Circuit. *See, e.g., Furman*, 828 F.2d at 908–09 (Pratt, J., dissenting) (survey of the diverse and various approaches by district courts in the circuit to RICO allegations). Nor has the Second Circuit itself proven to be a beacon capable of guiding the district courts through the fog. Rather, each panel that has confronted the issue appears to

---

**3.** Paragraph 34 of the amended complaint provides an overview of the alleged predicate acts which are listed in ¶¶ 1–6 above. The plaintiff prefaces that portion of the complaint by alleging "upon information and belief" that the defendants engaged in the communication or transaction listed in subparagraphs (a)–(e) of paragraph 34 through the mails or by wire. Only the allegations paraphrased in ¶¶ 3 & 7 above are pleaded specifically "upon information and belief."

**4.** An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal enti-

ty." 18 U.S.C. § 1961(4); *see also United States v. Turkette,* 452 U.S. 576, 585–87, 101 S.Ct. 2524, 2529–31, 69 L.Ed.2d 246 (1981) (enterprise encompasses both legitimate and illegitimate endeavors). It appears on this record that the two separate enterprises alleged meet this requirement.

**5.** The debate has "revolve[d] around whether a pattern can exist within a single criminal episode and whether a pattern requires the presence of a common criminal scheme." *Beauford v. Helmsley,* 843 F.2d 103, 106 (2d Cir.1988) (citing *United States v. Moeller,* 402 F.Supp. 49, 57 (D.Conn.1975) (Newman, J.)).

have blazed a slightly different trail. *See Weisman*, 624 F.2d 1118 (a "pre-*Sedima*" case holding that two predicate acts can satisfy the "pattern" requirement); *Ianniello*, 808 F.2d 184, 190 (holding that although the *Sedima* footnote is *dictum*, it is not inconsistent with *Weisman*, which teaches that relatedness and continuity is addressed in the context of the concept of enterprise in § 1962, and to a lesser extent, the ten year requirement in § 1961(5), and that an enterprise with a "single purpose" can form the basis of a § 1962 violation because an enterprise is a continuing operation and the racketeering acts are done in the conduct of the affairs of that enterprise); *Beck*, 820 F.2d 46 (apparently extending *Ianniello* to require a plaintiff to prove a "continuing" enterprise, rather than one with a straightforward, short-lived goal); *Furman*, 828 F.2d 898, 902–03 (requiring "continuity in the conduct at issue" and "continuity and relatedness in the enterprise"); *Albany Ins. Co. v. Esses*, 831 F.2d 41 (2d Cir.1987) (dismissal of a RICO complaint because the purpose of the enterprise—inducement of an insurer to pay a fraudulent claim—had an obvious terminating goal, and since there was no threat of criminal activity beyond that date, the enterprise was not sufficiently continuing); *Creative Bath Prods., Inc. v. Connecticut Gen. Life Ins. Co.*, 837 F.2d 561, 564 (2d Cir.1988) (although number of alleged acts sufficed to form a pattern, the scheme, carried out "in pursuit of a single short-lived goal" did not establish a sufficiently continuing enterprise); *see also Beauford v. Helmsley*, 843 F.2d 103, 107–10 (2d Cir. 1988) (survey of Second Circuit decisions interpreting the "pattern" and "enterprise" requirements).

█ The Court declines to harrow ground already plowed by so many other courts. Instead of adding to the certainly uncertain state of affairs, it is sufficient in the instant matter to look no further than *Beauford*, the most recent relevant Second Circuit authority. In that case, tenants of the Parkchester Apartments Co. apartment complex sued the principals of the complex, its sales agents, and two engineering firms for a variety of frauds allegedly committed in connection with an offering plan for the conversion of the apartments into condominiums. *Id.* at 104. The proposed second amended complaint[6] named the Parkchester apartment complex as the RICO enterprise and, in an "overview" of racketeering acts, charged the defendants, *inter alia*, with a variety of material misrepresentations, misstatements, and material ommissions in the offering plan and with regard to the design and maintenance of the buildings in the complex. *Id.* at 105. After surveying the relevant post-*Sedima* decisions in the circuit, the court concluded that whether a RICO claim is analyzed in terms of "pattern" or "enterprise," the general consensus is for the court to

> require continuity in any event, and find insufficient evidence of continuity in a single criminal episode regardless of how many fraudulent acts it entails. In other words, a single criminal episode or scheme does not charge a claim under RICO because it lacks sufficient continuity to constitute an enterprise, even if its fraudulent acts constitute a pattern.

*Beauford*, at 110. The court went on to observe that the case involved a single "scheme to defraud buyers tenants, and the authorities overseeing the laws pertaining to such." *Id.* Even though there was alleged considerable continuous activity, and the enterprise was continuing to promote and effect the conversion plan, the Court held that "a discrete, even if widespread, and a continuing even if finite, scheme is [not] sufficient to permit [the] plaintiff to take advantage of RICO." *Id.* at 110.

The instant complaint presents a scenario at least analogous to that in *Beauford*. Here, the alleged goal of the defendants was to put the plaintiff out of business and to boost Soundview's position in the market

---

6. The court reviewed both the first and second amended complaints that had been dismissed by the district court. Though the same, and perhaps a few additional racketeering acts were alleged in the second amended complaint, the first amended complaint alleges the conglomeration of all the defendants as an additional enterprise. *Beauford*, at 105.

by using Celpaco's customer lists and other confidential information. Although, arguably the attainment of the scheme's goal was the creation of Soundview, the exodus of Celpaco's employees, and the termination of MD's agreements, the scheme would not, in any event, last longer than the time it would take for the capture by Soundview of that portion of the market previously controlled by Celpaco. Here, as in *Beauford,* the alleged enterprises remain in existence and continue to engage in the alleged activity. Like the plaintiffs in *Beauford,* Celpaco has failed to allege sufficient continuity of the enterprises to allow the plaintiffs to seek redress from the RICO statute for the defendants' alleged frauds. Accordingly, the RICO counts of the amended complaint are hereby DISMISSED without prejudice.

### II. *Pleading Requirements for the Predicate Acts*

■ Even were the RICO allegations to survive initial judicial scrutiny, the pleadings still suffer from several other deficiencies. The mail and wire fraud statutes upon which the predicate acts are founded, require, *inter alia,* a showing of intentional fraud.[7] *E.g., United States v. Von Barta,* 635 F.2d 999, 1005 n. 14 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); 18 U.S.C. §§ 1341, 1343. In contrast to, but not to the exclusion of, generally liberal pleading requirements, Fed.R.Civ.P. 8, allegations of fraud normally must be pleaded with "particularity." Fed.R.Civ.P. 9(b); *see Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979) (Rule 9 represents a special pleading requirement contrary to the simplified pleading approach adopted in Rule 8), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Compliance with this requirement has been found to be of particular importance when fraud allegations

constitute the predicate acts for RICO claims that place at stake the reputation interests of the defendants accused of "racketeering." *Newman v. Rothschild,* 651 F.Supp. 160, 162 (S.D.N.Y.1986). Additionally, stringent adherence to the particularity requirement is important in a case such as this where the predicate fraud allegations provide the only link to federal jurisdiction, and the opportunity for an award of treble damages—each of which might serve as significant *in terrorem* settlement leverage. *See Ross,* 607 F.2d at 557.

■ To satisfy the requirements of Rule 9(b) the plaintiff must specify the time, place, and content of the alleged false representation, and describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transaction furthered the fraudulent scheme. *Zerman v. Ball,* 735 F.2d 15, 22 (2d Cir.1984); *see also Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1369 (D.Conn.1987); *Ghouth v. Conticommodity Services, Inc.,* 642 F.Supp. 1325, 1331–32 (N.D.Ill.1986). Second, the plaintiff must specify the relevant acts of each defendant, including the facts constituting scienter, *Beck,* 820 F.2d at 50 (plaintiff must plead facts that give rise to inference of scienter), and, because breach of fiduciary duty is alleged, an explanation of each particular defendant's duty to the plaintiff. *The Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038, 1043 (S.D.N.Y.1986) (particularity requirements in multidefendant securities fraud); *See Zerman,* 735 F.2d at 22. In this regard, because the complaint is based, in part, on theories of conspirator and aider and abettor liability, even greater specificity is required.[8] As to aider and abettor liability,

---

7. The elements of the mail and wire fraud statutes require knowing use of mail or wire communications in interstate commerce to further a scheme to defraud one of money or property. *United States v. Gelb,* 700 F.2d 875, 879 (2d Cir.), *cert. denied,* 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152 (1983); *United States v. Regent Office Supply Co.,* 421 F.2d 1174, 1180 (2d Cir. 1970).

8. Although conspiracy and aiding and abetting are not averments enumerated under the particularity requirement of Fed.R.Civ.P. 9(b), the plaintiff nevertheless must provide the specific factual basis for a claim that a defendant conspired with, or aided and abetted, another. *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1372 (D.Conn. 1987).

the plaintiff must plead the specific details of the knowledge of each aider and abettor of the primary fraud, and specifically how the particular aider and abettor provided substantial assistance in the furtherance of the fraud. *The Limited, Inc.,* 645 F.Supp. at 1043 n. 11 (citing, *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47–48 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978)). As to the conspiracy claims, Celpaco must allege as to each member of the conspiracy the facts manifesting the agreement to participate in what he or it knew to be "a collective venture toward a common goal." *Laterza v. American Broadcasting Co., Inc.,* 581 F.Supp. 408, 412–13 (S.D.N.Y.1984). Conclusory allegations of a conspiracy or accomplice liability are not sufficient. *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 119 (2d Cir.1982); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444–45 (2d Cir.1971).

■ The allegations at the matrix of the RICO portion of the complaint fail woefully to satisfy these requirements. (¶¶ 32–36).[9] For example, although the use of interstate mail and wire is alleged generally in paragraph 34 of the amended complaint, in all but two of the predicate acts alleged there is no clear indication that either interstate mail or wire was the vehicle for a particular transaction (¶¶ 34 & 35).[10] Further, several theories of liability stemming from mail or wire fraud emerge from the complaint, including the misappropriation of funds and confidential business information, all of which appear to relate to a breach of fiduciary duty. In none of the allegations, however, are the contents of the allegedly fraudulent representation or transaction, or how each transaction occasioned a breach of fiduciary duty, described with sufficient particularity. Nor is it alleged how each transaction furthered the allegedly fraudulent scheme.[11] The particular confidential and proprietary information, the disclosure of which might, in some instances, constitute the fraud, is, as it applies to paragraph 34(e), pleaded with sufficient particularity only by relation back to paragraph 30 where reference is made to the information.

Only in paragraph 30 of the amended complaint is it alleged that the individual defendants owed a duty to the plaintiff, but in none of the predicate fraud allegations is the particular duty owed by each defendant, or how each defendant breached that duty, pleaded with sufficient particularity. Similarly, in none of the allegations in which multiple defendants appear to be implicated is there any delineation sufficient to put each defendant on notice of the particular act with which he or it is accused, or facts sufficient to infer in all allegations that a particular defendant possessed the requisite scienter. *Cf. DiVit-*

9. The plaintiff has pleaded at least six putative fraud claims in paragraph 34 of the complaint and an additional one in paragraph 35. The other portions of the amended complaint relevant to the RICO claim appear in paragraphs 29–36, which generally provide background information of the scheme.

10. To prove a violation of the mail or wire fraud statutes, the plaintiff must demonstrate that the use of the mails or wires in furtherance of the scheme was reasonably forseeable. *E.g., Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954). To satisfy Rule 9(b) the plaintiff should at least refer to whether the mails or wires were the vehicle for a particular communication or transaction. *Nevitsky v. Manufacturers Hanover Brokerage Serv.,* 654 F.Supp. 116, 120 (S.D.N.Y.1987) (Weinfeld, J.). Although for some allegations the plaintiff does allege specifically whether the mails or wires were used, it appears that, for the remaining allegations of the predicate acts, the plaintiff relies either on a theory that, of the physical proximity of the parties the use of the mails and wires as a vehicle for the transmissions should be presumed, or information regarding the mode of communications lies within the peculiar knowledge of the defendants and, consequently cannot, and need not be pleaded.

11. A reading of paragraph 36 of the amended complaint might imply that the plaintiff alleges that all of the acts alleged in paragraph 34 together comprised one scheme that furthered the alleged conspiracy to destroy Celpaco as a business entity and to take advantage of its confidential information and other intangible assets. Because the plaintiff has claimed that each alleged act is separately indictable, the Court need not pass on the sufficiency of the pleading were this theory pursued. *See* Plaintiff's Memorandum of Law in Support of Memorandum of Affirmance at 5 (Oct. 5, 1987).

*torio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *Lincoln Nat. Bank v. Lampe,* 414 F.Supp. 1270, 1278 (N.D.Ill.1976) (Rule 9(b) prohibits the lumping together of defendants so that it appears each defendant is responsible for the statements made by the others).

Insofar as the defendants' liability for the predicate frauds is premised on their capacity as either conspirators or accomplices, missing from the complaint are the necessary specifics regarding an objective manifestation of the agreement of each defendant to join the conspiracy, or how each, as aider and abettor, lent himself, or itself, to the furtherance of the scheme. The Court recognizes that the plaintiff has attempted to set forth in the complaint, particularly in paragraphs 29–33, facts that arguably might satisfy the particularity requirements, and buttress the allegations of the particular predicate frauds set forth in paragraph 34, but, for the most part, those allegations are themselves too conclusory and lacking in substance to pass muster. *See Andreo,* 660 F.Supp. at 1372 (failure to allege objective manifestation of agreement to conspire even in context of entire complaint); *cf. Edelstein,* 802 F.2d at 54; *Ghouth,* 642 F.Supp. at 1332 (mail fraud allegations placed in context by reference to the entire complaint).

The plaintiff also has failed to heed the prohibition against pleading fraud "upon information and belief." *DiVittorio,* 822 F.2d at 1247; *Edelstein,* 802 F.2d at 54 n. 1; *see Furman,* 828 F.2d at 900 (the court looks with a "jaundiced eye upon allegations of fraud based upon information and belief"). The exception to this rule, of which the plaintiff seeks to be availed, allows this form of pleading as to "matters peculiarly within the opposing party's knowledge." *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *see also Edelstein,* 802 F.2d at 54 n. 1. Typically, this exception has been available to plain-

tiffs in derivative suits who could not possibly have knowledge of the workings of the defendant corporation, *see Schlick,* 507 F.2d at 379; *cf. City of New York v. Balkan, Inc.,* 656 F.Supp. 536, 545 (E.D.N.Y. 1987) (mailings or bribes subject of the alleged frauds too numerous to require specificity of all in the complaint), or when the allegedly fraudulent activities are "clandestine" and discovery had not yet commenced. *Rooney Pace, Inc. v. Reid,* 605 F.Supp. 158, 162 (S.D.N.Y.1985) (Weinfeld, J.) (conspiracy to commit securities fraud); *cf. Chambers Devel. Co. v. Browning–Ferris Indus.,* 590 F.Supp. 1528, 1539 (W.D.Pa.1984) (forbearance from dismissal of RICO claim under Rule 9(b) pending further discovery). In its Memorandum of Affirmance (Sept. 11, 1987) the Court held that, because the matters appeared to be within the peculiar knowledge of the defendants, and because the information might be gleaned from subsequent discovery, Celpaco's pleadings "upon information and belief" were acceptable. Upon reconsideration, however, the Court cannot adhere to that holding.

First, although it has not been without its snags, discovery had commenced more than a year before the instant motion was fully submitted, and at least several months before the complaint was amended.[12] Second, should this exception to the particularity requirement apply, the plaintiff still must provide the source of the "information," and the reasons on which the "belief" is founded. *The Limited, Inc.,* 645 F.Supp. at 1038; *see DiVittorio,* 822 F.2d at 1248. Although the plaintiff should not be put to its proof at the pleading stage, *see Haroco, Inc. v. American Nat'l. Bank & Trust Co.,* 747 F.2d 384, 405 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Balkan, Inc.,* 656 F.Supp. at 545, and assuming that the relevant allegations lie within the peculiar knowledge of the defendants, the plaintiff has failed to set forth its source of information, and its basis for concluding that a conspiracy existed or that certain defend-

12. In fact, the plaintiff has conceded in its latest brief that certain information regarding the predicate acts has been revealed during the course of discovery. *E.g.,* Celpaco's Memorandum of Law in Support of Memorandum of Affirmance (Oct. 5, 1987)

ants aided and abetted each other. *Cf. Edelstein*, 802 F.2d at 54. Likewise, the plaintiff has not met this requirement with regard to the predicate acts pleaded "upon information and belief."

In paragraph 34 of the complaint the plaintiff has lumped together all but one of the predicate acts. It appears from the pleading that plaintiff believes the whole is greater than the sum of its parts. The Court is not convinced of the synergism, and consequently the predicate fraud allegations are hereby DISMISSED for failure to plead with particularity in accordance with Fed.R.Civ.P. 9(b). In view of the policy of freely granting leave to replead whenever a plaintiff may be able to correct the deficiencies, the plaintiff will be given an opportunity to amend the complaint. Fed.R.Civ.P. 15(a); *cf. Nevitsky v. Manufacturers Hanover Brokerage Serv.*, 654 F.Supp. 116, 121 (S.D.N.Y.1987) (Weinfeld, J.).

### III. *RICO Conspiracy Allegations*

■ In the Seventh and Eighth Count of the amended complaint, the plaintiff alleges a RICO conspiracy, and names all the defendants as co-conspirators. *See* 18 U.S.C. § 1962(d). In the Seventh Count the enterprise is comprised of a conglomeration of all the defendants, and in the Eighth Count Soundview is the enterprise. The predicate acts are the same as those applicable to all the RICO counts, and which already have been discussed at length here-

in. To properly plead a RICO conspiracy, the plaintiff must assert that each defendant implicated in the conspiracy objectively manifested an agreement to participate in the affairs of an enterprise through the commission of two or more predicate crimes. *Andreo*, 660 F.Supp. at 1372; *Chambers*, 590 F.Supp. at 1538. The plaintiff's conclusory and bare allegations that a RICO conspiracy existed, and that the defendants each agreed to participate in the conspiracies, do not satisfy this requirement. *Cf. Andreo*, 660 F.Supp. at 1372; *Chambers*, 590 F.Supp. at 1538. Accordingly, Counts Seven and Eight are DISMISSED without prejudice.

### IV. *The Predicate Acts*

■ A properly pleaded RICO claim must include an allegation that each defendant engaged in a "pattern of racketeering activity." Thus, Celpaco must allege, *inter alia*, that each defendant committed at least two of the predicate acts that are "indictable" and enumerated in the RICO statute, 18 U.S.C. § 1961(1).[13] As discussed previously, the plaintiff has alleged a plethora of acts in paragraphs 34 and 35 of the amended complaint, putatively indictable violations of either the mail or wire fraud statutes.[14] All of these alleged predicate acts appear to be founded upon a breach of fiduciary duty, and for present purposes, may be corralled into three distinct groups.[15] The first is the misappro-

---

13. The rule that requires each defendant to have personally engaged in racketeering activity may be relaxed as to those RICO claims founded upon an enterprise that is itself a conspiracy, so long as at least two acts of racketeering are committed by members of the enterprise and the acts are in furtherance of the conspiracy. *Rich–Taubman Assoc. v. Stamford Restaurant*, 587 F.Supp. 875, 879 (S.D.N.Y.1984) (citing *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1074 (2d Cir.1977)). The exception is founded in principles of common law conspiracy that allow acts of one in furtherance of a conspiracy to be imputed to his coconspirators. *See generally State v. McLaughlin*, 132 Conn. 325, 44 A.2d 116 (1945). As to the instant complaint, this concept may be relevant only to counts one, three, five, and seven, which allege a conglomeration of the defendants who, by virtue of the overall conspiracy, have allegedly formed an enterprise (¶ 38).

14. Because the mail fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18 U.S.C. § 1343 employ similar language to prohibit "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretense or promises" that is furthered by either the mails or wire, respectively, courts uniformly have lent the same construction to both statutes. *E.g., United States v. Von Barta*, 635 F.2d 999, 1005 n. 11 (2d Cir.1980), cert. denied, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). The Court refers herein only to the mail fraud statute, but the discussion refers to both statutes.

15. On at least one occasion, the plaintiff has stated expressly that the predicate fraud allegations, specifically those concerning the *en masse* resignations, the cessation of commission payments, and causing the termination of the MD contracts, are founded upon a breach of fiduci-

priation of confidential and proprietary business information, including Celpaco's customer lists, so that the defendants could further their own business endeavors. The second group is the misappropriation of funds and is comprised solely of the fraudulent wire transfer on December 30 of Celpaco funds by the defendant Marks. The third group is comprised of the remaining predicates, including the resignation of Celpaco's employees, the agreement of the individual defendants and MD to disrupt plaintiff's business, to form Soundview, and to terminate Celpaco's agreement with MD, and the conspiracy to cease the payment of Celpaco's outstanding commissions.

■ It cannot reasonably be disputed that "[i]ntangibles such as 'confidential and nonpublic commercial information'" fall within the concept of "property" under the mail fraud statute. *United States v. Newman*, 664 F.2d 12, 19 (2d Cir.1981) (quoting *United States v. Louderman*, 576 F.2d 1383, 1387 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978)); *Carpenter v. United States*, — U.S. —, 108 S.Ct. 316, 320, 98 L.Ed.2d 4007 (1987). What is disputed by the parties is the extent to which a breach by an employee of a fiduciary duty of honesty and loyalty owed to his employer may be held to violate the mail or wire fraud statutes. Clearly, a breach of a fiduciary duty cannot, standing alone, sustain a charge of mail fraud. *United States v. Siegel*, 717 F.2d 9, 14 (2d Cir.1983); *Newman*, 664 F.2d 12, 19 (2d Cir.1981); *United States v. Bronston*, 658 F.2d 920, 926 (2d Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982); *Von Barta*, 635 F.2d at 1002. The

sustenance of such a charge can only be founded upon "the concealment by a fiduciary of material information which he is under a duty to disclose to another under circumstances where the nondisclosure could or does result in harm to the other." *Bronston*, 658 F.2d at 926; *Newman*, 664 F.2d at 19; *see McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (intention to cause pecuniary or property harm must be present as a component of a scheme to defraud arising from a breach of duty). The statutes proscribe actual frauds for which a specific intent to defraud is required. *Von Barta*, 635 F.2d at 1005 n. 14. The limitation of the scope of breaches of fiduciary duty that may be prosecuted as mail fraud is necessary to ensure the element of specific intent which often is lacking in most breaches of fiduciary duty. *See id.*[16]

■ With regard to the first group of predicate acts, the misappropriation of confidential and proprietary business information, the "allegations must support an inference of intent on the part of the employee to defraud or deceive his employer, either by affirmative misrepresentations or by silence." *Horn's, Inc. v. IM International Publishing*, RICO Bus. Disputes Guide (CCH) ¶ 6407 at 6238 (S.D.N.Y.1986). Whether the inference can be drawn in the instant case requires an examination of the timing of the alleged theft and the chain of events that led to the decision of the individual defendants to leave Celpaco and to reap the benefits from the information acquired during their employ. For example, for the purpose of determining the existence of intent, the court in *Horn's* drew a

ary duty. Plaintiff's Memorandum in Opposition to Motions to Dismiss at 21–22 (May 28, 1986). As to those acts, the plaintiff appears to have abandoned, at least in part, the fiduciary duty theory on another occasion. *See* Plaintiff's Memorandum of Law in Support of Memorandum of Affirmance at 5–6 (Oct. 5, 1987). Were the plaintiff to pursue a theory that spoke to the fraudulent means by which Soundview was incorporated, *see* ¶ 34(a), such theory would not be likely to pass muster, since Celpaco would be required to show, among other things, that the documents used to effect the incorporation actually contained fraudulent representations. *Parr v. United States*, 363 U.S. 370, 392, 80 S.Ct. 1171,

1184, 4 L.Ed.2d 1277 (1960); *see McNally v. United States*, — U.S. —, 107 S.Ct. 2875, 2878 n. 2, 97 L.Ed.2d 292 (1987). No such allegation has been made.

16. In its Memorandum of Affirmance, the Court set forth the standard to plead a breach of fiduciary duty as a mail fraud and remains adherent to that ruling. However, in that ruling the Court declined to grant defendants' motions to dismiss the predicate acts. Upon reconsideration it appears that further discussion and clarification is necessary.

distinction between an employee who accepts employment having already decided to relay confidential information to a competitor, and an employee who doesn't decide to convey that information until after he leaves his employment. *Id.* at 6238. The inference of the necessary intent may reasonably be drawn in the former instance, but not the latter. *Id.* Given the numerous deficiencies in the pleading of the alleged frauds, and the failure of the complaint to comply with Rule 9(b), the necessary evaluation is not appropriate on the present record. *Cf. Mauriber v. Shearson/American Exp., Inc.,* 546 F.Supp. 391, 397 (S.D.N.Y.1982) (sufficiency of RICO allegations cannot be evaluated until fraud allegations comply with particularity requirements).

In order to set forth a cognizable claim under the mail fraud statute, the "deceived party must lose some money or property." *United States v. Evans,* 844 F.2d 36, 39 (2d Cir.1988); *see also McNally,* 107 S.Ct. at 2875. With regard to the alleged misappropriation of funds, the plaintiff has alleged that Marks caused the money to be removed without authorization from an account maintained by Celpaco, yet there is no clear allegation that the money belonged to Celpaco (¶ 35). In fact, in its Supplemental Brief in Support of its Motion to Dismiss (Oct. 5, 1987), MD represents that, in a related action pending in state court, Celpaco's lack of ownership of the funds has been confirmed. *Id.* at 8. Should this in fact be the case, dismissal of paragraph 35 may indeed be appropriate. For a variety of reasons, however, the present record is not an appropriate one for a ruling founded upon Celpaco's lack of ownership. *See* Fed.R.Civ.P. 12(c).

The court in *Newman* cautioned that the disclosure requirement as it relates to the prosecution of a mail fraud, must not "be used in bootstrap fashion by finding an obligation to disclose in every breach of fiduciary duty." *Newman,* 664 F.2d at 19. Thus, especially in connection with the variety of acts that comprise group three, the Court must evaluate in relation to state law, each fiduciary duty that allegedly is breached and which forms the basis of a mail fraud violation, *United States v. Pisani,* 773 F.2d 397, 409–11 (2d Cir.1985), as well as the relevant particular facts. *Maryland Metals, Inc. v. Metzner,* 282 Md. 31, 382 A.2d 564, 570 (1978).

As a general matter, an employee is entitled to make preparations to compete in the future with his employer even while he remains in the employ of his prospective competitor. *Metzner,* 382 A.2d at 569. Though obligated to be candid with his employer regarding his preparations to compete, he need not inform his employer of his plans unless they are inimical to the interests of his employer. *Id.* (citing *C-E-I-R, Inc. v. Computer Corp.,* 229 Md. 357, 367, 183 A.2d 374 (1962), cited with approval in *Republic Sys. & Programming, Inc. v. Computer Assist., Inc.,* 322 F.Supp. 619, 626 (D.Conn.1970), *aff'd,* 440 F.2d 996 (2d Cir.1971). Thus, there are limitations on the employee's privilege to make preparations to compete in the future with his employer, at least to the extent that he must reveal to his employer the details of his preparations. Some actions found by other courts to have defeated that privilege are at least analogous, if not similar to some of the acts alleged here. *See Metzner* 382 A.2d at 569–70 (citing *Ritterpusch v. Lithographic Plate,* 208 Md. 592, 602, 119 A.2d 392 (1956) (solicitation of employer's customers prior to cessation of employment); *Duane Jones Co. v. Burke,* 306 N.Y. 172, 117 N.E.2d 237, 245 (1954) (conspiracy to bring about mass resignation of employer's key employees); *Raines v. Toney,* 228 Ark. 1170, 313 S.W.2d 802, 809–810 (1958) (usurpation of employer's business opportunities)); *see also Heyman v. Kline,* 344 F.Supp. 1088, 1101 (D.Conn. 1970) (causing other employees to resign and working for people other than one's employer constitutes breach of fiduciary duty), *aff'd in relevant part,* 456 F.2d 123 (2d Cir.), *cert. denied,* 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972). Whether in this case the employee's privilege was abused or his fiduciary duty breached, requires an examination of the relevant facts and law, which is inappropriate in the context of a review of the pleadings under

Rule 12(b), notwithstanding the pleading deficiencies of the instant complaint that make the endeavor impossible. *Cf. Mauriber* 546 F.Supp. at 397.

Accordingly, for the immediately foregoing reasons, the motion under Rule 12 to dismiss the RICO claims for failure to plead a sufficient number of indictable predicate acts, is DENIED without prejudice, although the RICO claims otherwise remain dismissed. *See supra.*

## CONCLUSION

For the reasons set forth in Section I *supra*, the RICO claims are DISMISSED without prejudice. Alternatively, the RICO claims are DISMISSED under Fed.R.Civ.P. 9(b) for the reasons set forth in Section II *supra*, and the RICO conspiracy allegations are DISMISSED for the reasons set forth in Section III *supra*. For the reasons set forth in Section IV *supra*, the motion under Fed.R.Civ.P. 12 to dismiss the RICO claims for a failure to state a claim based on the predicate frauds, is DENIED on the present record without prejudice. Because of this disposition, the Court no longer has subject matter jurisdiction over the plaintiff's pendent claims, and they too are DISMISSED until such time as the Court may otherwise direct. *Cf. Nevitsky*, 654 F.Supp. at 121. The plaintiff is hereby granted leave to file an amended complaint that is consistent with this opinion no later than May 27, 1988. Upon plaintiff's failure to do so, judgment shall enter and the matter shall be removed from the docket of the Court. The Special Master who has overseen discovery matters in this case is hereby directed to submit to the Court a bill for his services, for which the parties ultimately will be held responsible. To the extent any prior ruling on the instant motions is inconsistent with this ruling, such prior ruling is hereby VACATED.

It is SO ORDERED.